**MEMORIAL MEDICAL CENTER OF EAST TEXAS, Petitioner,**

v.

**Berney R. KESZLER, M.D., Respondent.**

**No. 96–1262.**

Supreme Court of Texas.

April 18, 1997.

Robert T. Cain, Jr., Todd Lee Kassaw, David L. Allen, Lufkin, for Petitioner.

Monty G. Murry, Texarkana, for Respondent.

PER CURIAM.

In *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984), we held that releases are only effective against named parties to the release or parties that are described in the release with such descriptive particularity that their identity is not in doubt. In this case, we decide whether a release which fails to specifically denominate a cause of action is ineffective to release that claim. The court of appeals said yes. We disagree. Also, the court of appeals concluded that a party may not release a claim of gross negligence. On this issue we also disagree. We reverse the judgment of the court of appeals and render judgment for Memorial Medical Center of East Texas.

Memorial instituted "corrective action" against Dr. Berney R. Keszler when he was found guilty of tampering with government documents. After Memorial revoked his staff and clinical privileges, Keszler sued Memorial. Memorial and Keszler entered into a Compromise Settlement Agreement in which Memorial agreed to pay Keszler $225,000 and assume payment on a note in exchange for a release of claims executed by Keszler. Both parties also signed a Release in which they expressly released their claims against each other.

After the settlement, Keszler sued Memorial for fraud, negligence, and gross negligence. Keszler sought damages for injuries suffered as a result of his alleged exposure to ethelyne dioxide (ETO), a toxic sterilizing agent the hospital used during his employment. Memorial moved for summary judgment on the grounds that Keszler had released all claims. The trial court granted summary judgment, and Keszler appealed. The court of appeals reversed and remanded for trial.

■ The two documents the parties executed are the Compromise Settlement Agreement and the Release. The Settlement Agreement provides:

KESZLER shall release and forever discharge MEMORIAL ... from any and all claims, causes of action, demands, known or unknown, which KESZLER has or may have and which have not accrued, arising out of and in connection with the corrective action taken against KESZLER by MEMORIAL and any other actions KESZLER might have against MEMORIAL for any such action taken against KESZLER.

The Release, on the other hand, provides:

Keszler ... does hereby RELEASE, ACQUIT and FOREVER DISCHARGE [Memorial] ... from any and all claims, demands, actions, and causes of action of any kind whatsoever ... which [Keszler] has or might have, known or unknown, now existing or that might arise hereafter or which have not yet accrued, directly or indirectly attributable to or in any way arising out of corrective action taken by [Memorial] against [Keszler] *and any other matter relating to [Keszler's] relationship with [Memorial]*, including but not limited to his relationship as a member of the staff or as a physician having clinical privileges, *it being the intent of [Keszler] to release all claims of any kind or character which he might have against [Memorial]* ....

(emphasis added).

Clearly the documents are not identical. The parties, however, have not contested the validity of the release or claimed ambiguity or fraud in its execution. Consequently, the interpretation of the release is to be decided by the court as a question of law. *Westwind Exploration v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 381 (Tex.1985).

■ When dealing with two documents comprising a single agreement, a court should read and construe them together. *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex.1981). Accordingly, the intent of Memorial and Keszler must be deduced by examining the Agreement and the Release together. Although the quoted language of the Agreement purports to release only those claims related to the "corrective action," the Release contemplates the release of other claims as well. Construing the agreements so narrowly as to effectuate a release of only those claims arising out of Memorial's "corrective action" would nullify the Release.

■ It is true that to release a claim, the releasing document must "mention" it. *Vic-*

*toria Bank and Trust Co. v. Brady,* 811 S.W.2d 931, 938 (Tex.1991). But the court of appeals holds a claim is not mentioned unless it is specifically enumerated, stating "We find no mention in the preambles of anything related to appellant's present claims for exposure to ethelyne oxide gas...." 931 S.W.2d at 62. Moreover, Keszler argues that our decisions in *Victoria* and *Duncan* support the court of appeals' judgment. We disagree.

In *Victoria,* a dispute arose between a business called "The Cattle Company" and Victoria Bank and Trust. *Victoria,* 811 S.W.2d at 933. The Cattle Company and the Bank had engaged in two distinct transactions, one involving a $150,000 loan in which The Cattle Company was a co-obligee and one involving the extension of a line of credit. *Id.* at 933–34. When matters involving the loan deteriorated, a lawsuit ensued between the parties to the loan. *Id.* at 934. They reached a settlement in which The Cattle Company agreed to release the Bank from "any and all claims and causes of action ... directly or indirectly attributable to the above described loan transaction." *Id.* at 938. When The Cattle Company sued the Bank over the transaction involving the line of credit, the Bank argued that The Cattle Company had already released it from all claims. *Id.*

Looking at the preamble to the settlement agreement, we determined that the "above described loan transaction" referred only to the initial loan. *Id.* Claims involving the line of credit transaction were not released because that transaction was not mentioned. *Id.* at 939. This case is distinguishable from *Victoria* because the release is not limited to the "corrective action" taken by Memorial. On the contrary, the Agreement and the Release read together release all claims relating to Keszler's relationship with Memorial.

In *Duncan,* a case involving multiple tortfeasors, one tortfeasor settled with the plaintiff and obtained a release. *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 418 (Tex. 1984). Cessna, a second tortfeasor, claimed that the document released all tortfeasors from liability. Cessna argued that because the release purported to discharge "any other corporations or persons whomsoever responsible" for the accident, the document released Cessna from liability. *Id.* We held that in a multiple tortfeasor context:

> the mere naming of a general class of tortfeasors in a release does not discharge the liability of each member of that class. A tortfeasor can claim the protection of a release only if the release refers to him by name or with such descriptive particularity that his identity or his connection with the tortious event is not in doubt.

*Id.* at 419–20. In this way, a plaintiff would not inadvertently release non-settling wrongdoers. *Id.* at 422. Accordingly, *Duncan* also is distinguishable.

In this case, the parties agreed that Keszler would release all claims "relating to [Keszler's] relationship with [Memorial]." Keszler's claim of ETO exposure, because it is related to his relationship with Memorial, is "mentioned" in the releasing document. The court of appeals erred in holding otherwise.

■ The remaining question is whether claims for gross negligence can ever be released. The court of appeals held that such a release is against public policy. 931 S.W.2d at 63 (citing *Smith v. Golden Triangle Raceway,* 708 S.W.2d 574, 576 (Tex. App.—Beaumont 1986, no writ)). However, the court of appeals failed to distinguish a pre-accident waiver of liability from a post-injury release made in settlement of claims. In *Golden Triangle,* the issue was whether a pre-injury release could effectively dispense with a claim of gross negligence. *Golden Triangle,* 708 S.W.2d at 576. The court found a pre-injury release of gross negligence invalid as against public policy. *Id.* We have never held post-injury releases of gross negligence claims invalid. There is no logic in prohibiting people from settling existing claims. Significantly, such a rule would preclude settlement of many such claims. The court of appeals erred in holding that Keszler could not release his gross negligence claim against Memorial.

Pursuant to Rule 170 of the Texas Rules of Appellate Procedure, this Court grants Me-

morial's application for writ of error and, without hearing oral argument, reverses the court of appeals' judgment. TEX.R.APP. P. 170. Further, under Rule 180 of the Texas Rules of Appellate Procedure, this Court renders judgment that Keszler take nothing. TEX.R.APP. P. 180.