**LEXINGTON INSURANCE COMPANY and Reliance National Insurance Company, Appellants,**

v.

**THE W.M. KELLOGG COMPANY, Appellee.**

No. 01–96–01168–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 4, 1998.

David Redford, Houston, for Appellants.°

Phillip T. Bruns, Houston, for Appellee.

Before MIRABAL, O'CONNOR and NUCHIA, JJ.

## OPINION

MIRABAL, Justice.

This is an appeal from a summary judgment for the plaintiff in a declaratory judgment action to determine the validity of a release. We affirm.

The following is uncontested. Plaintiff, the W.M. Kellogg Co. (Kellogg), agreed to design, engineer, and construct an ethylene manufacturing facility in Louisiana for Westlake Petrochemical Corporation (Westlake). In 1992, a disagreement arose between Kellogg and Westlake concerning the work performed by Kellogg. As a result of the disagreement, after Kellogg completed the project, Kellogg and Westlake signed a "Project Close–Out Settlement Agreement" (the Agreement) on January 4, 1993. The Agreement contained release language stating:

> For and in consideration of the cash, invoice cancellations, credit, benefits, mutual promises, and terms and conditions provided for in this Agreement, the receipt and adequacy of which are hereby expressly acknowledged by Westlake Polymers and Westlake ... each individually and on behalf of its respective successors and assigns, do hereby and forever RELEASE, ACQUIT and DISCHARGE Kellogg ... their officers, employees, shareholders, affiliates, subsidiaries, directors, attorneys, agents, legal representatives, successors and assigns of and from any and all claims, actions or causes of action, known or unknown, accrued or which may accrue in the future, for damages, injury, losses, costs, charges, expenses or liability of whatsoever kind or character, known or unknown, accrued or which may accrue in the future, arising out of or relating, directly or indirectly, to any of the Released Transactions.

The Agreement further provided that:

> The term "Released Transactions["]: means and includes any and all acts, omissions, promises, events, occurrences, warranties, representations, transactions, dealings, inducements or agreements of every kind or character relating directly or indirectly (i) to the negotiation, execution, performance, warranties, terms, conditions, rights and obligations, or any other aspect of the subject matter of the Project Agreement, (ii) to the Plant; or (iii) to any engineering services, design work or other services of any kind or character performed directly or indirectly by Kellogg for Westlake Polymers and/or Westlake in connection with the Project Agreement for the Plant.

In exchange for the settlement agreement and release, Kellogg paid Westlake consideration with an aggregate value in excess of one million dollars.

Two years later, in 1995, there was an explosion at the plant that caused physical damage and a loss in production. Lexington Insurance Company and Reliance National Insurance Company (collectively, Lexington) paid to repair the damages to the plant caused by the emergency shut down. In 1996, Lexington, as subrogee of Westlake, threatened to assert a claim against Kellogg based on the incident. Lexington wrote Kel-

logg, stating it would claim the Agreement granted by Westlake was unenforceable as to claims for negligence and gross negligence.

On February 14, 1996, Kellogg filed suit in Harris County, requesting a declaratory judgment that the Agreement released the alleged claims in the threatened subrogation suit. Nine days later, on February 23, Lexington filed suit in Louisiana, alleging the negligence and gross negligence of Kellogg and others in the design and construction of the plant caused the damage.

Kellogg filed a motion for summary judgment in its declaratory judgment suit, and Lexington filed a response. The trial court rendered summary judgment, declaring that the Agreement released Kellogg from "any claims of any kind or character arising out of any design, engineering and construction of that certain ethylene facility near Lake Charles, Louisiana."

In a sole point of error,[1] Lexington asserts the trial court erred in granting Kellogg's motion for summary judgment because "the release does not meet the fair notice doctrine requirements as a matter of law." Specifically, Lexington claims the release does not encompass claims for negligence and gross negligence because the release fails (1) the "express negligence" test and (2) the conspicuousness test.

In reviewing a summary judgment, we must: (1) determine whether the movant has shown there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law, and, in doing so, (2) take evidence favorable to the nonmovant as true and indulge every reasonable inference in the nonmovants's favor. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985).

Lexington relies on *Dresser Industries, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993), for the proposition that the Agreement between Kellogg and Westlake must meet the two prongs of the fair notice doctrine: (1) the "express negligence" test and (2) the conspicuousness test. The Su-

preme Court in *Dresser*, however, specifically stated that its decision "applies the fair notice requirements to indemnity agreements and releases only when such exculpatory agreements are utilized to relieve a party of liability for its own negligence *in advance*."[2] *Id.* at 507–508 n. 1 (emphasis added).

The Supreme Court reaffirmed the limited scope of *Dresser* in *Green International, Inc. v. Solis*, 951 S.W.2d 384 (Tex.1997), stating, "[O]ur holding in *Dresser* is explicitly limited to releases and indemnity clauses in which one party exculpates itself from its own *future negligence*." *Id.* at 387 (emphasis added).

In the present case, the Agreement releasing Kellogg from liability, supported by consideration worth more than one million dollars, was drafted and signed *after* the acts which could give rise to liability were completed. The Agreement was signed after the construction of the plant had been completed, and it is uncontested a disagreement had arisen regarding Kellogg's performance. This case involves only claims for alleged negligence committed *before* the release was signed.

Accordingly, the "fair notice doctrine" under *Dresser* does not apply. We conclude the trial court did not err in ruling that the release was effective to bar Lexington's claims as a matter of law.

We overrule Lexington's sole point of error.

We affirm the judgment.

---

1. After filing their brief, appellants filed a motion to withdraw point of error two, which we granted.

2. The parties agree that *post-release* negligence would not be absolved by the release.