IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-40599
Summary Calendar
_____

TWYLA G SHACKLEFORD,

Plaintiff-Appellant,

v.

ST MICHAEL HEALTHCARE CENTER; ET AL,

Defendants,

ST MICHAEL HEALTHCARE CENTER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas
Docket No. 5:98-CV-93
_____

December 28, 1999

Before KING, Chief Judge, and DAVIS and DENNIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Twyla G. Shackleford ("Shackleford")

appeals from the district court's entry of summary judgment in

favor of Defendant-Appellee St. Michael Healthcare Center ("St.

Michael").  For the reasons stated below, we AFFIRM.

I. FACTUAL AND PROCEDURAL BACKGROUND

On March 16, 1993, while working at St. Michael Hospital,

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Shackleford was injured in a slip-and-fall accident. Shackleford filed a claim for worker's compensation that was accepted as compensable by the hospital, a self-insured employer. Shackleford began receiving medical treatment for her injuries and, on May 8, 1995, underwent an operation to remove her tail-bone. Shackleford continued to complain of pain after the surgery and, on April 15, 1996, underwent another operation. Both operations were performed at St. Michael Healthcare Center.[1] Shackleford claims that her body was not properly supported and padded during the second operation, causing her further injuries. These injuries are the basis for this medical malpractice action.

Prior to her second operation, Shackleford filed suit in Texas state court seeking damages against SCH Entercorp ("SCH"), the entity responsible for maintaining the flooring at the hospital. Shackleford complained that it was SCH's negligence that created the hazard that caused her to slip and fall. St. Michael Hospital intervened in this suit seeking reimbursement of worker's compensation payments made to Shackleford. Shackleford's suit against SCH was settled through mediation. A Settlement Agreement was subsequently entered into between Shackleford, SCH, and the hospital. The agreement provided that

---

[1] St. Michael Hospital, Shackleford's employer, was located in Texarkana, Arkansas. The hospital closed when St. Michael Healthcare Center opened in Texarkana, Texas. Both facilities share a common corporate pedigree. The hospital was organized as an Arkansas corporation with the sole corporate member being the Sisters of Charity of the Incarnate World, Houston, Texas. The healthcare center is an unincorporated division of the Sisters of Charity of the Incarnate World, Houston, Texas.

Shackleford would receive $60,000 from SCH, and $15,000 from St. Michael Hospital, and that the hospital would waive its third-party subrogation lien of $24,164.71. This lien included the costs associated with both of Shackleford's operations. In return, Shackleford agreed to the following release:

> The parties hereto do for themselves, and their respective officers, directors, stockholders, agents, employees, administrators, legal representatives, heirs, executors, successors, and assigns, remise, release and forever discharge the other parties hereto, and their respective officers directors, stockholders, agents, employees, administrators, legal representatives, heirs, executors, successors, and assigns of and from all or any manner of action, or actions, suits, cause or causes of action, controversies, claims, and demands whatsoever, against the other parties hereto, which they have or ever had, known or unknown now existing or that might arise hereafter, directly or indirectly attributable to the transaction described in pleadings on file in said cause, being intended to release any and all actions, suits, causes of action, claim and demands whatsoever, including, but not limited to fraud and deceit, which any party to such cause or to this Settlement Agreement may have against the other party whether or not asserted in the above numbered and styled cause.

The release further specified that "[a]ll parties have read this Settlement Agreement and understand that this is a compromise and settlement and release of all claims, known or unknown, present or future, that they have, or may have of the parties released arising out of the matters described herein."

After Shackleford filed this medical malpractice action against St. Michael Healthcare Center, St. Michael moved for

3

summary judgment.  St. Michael argued that the surgery was a result of Shackleford's slip-and-fall accident, and therefore her claim of medical malpractice was barred by the Settlement Agreement.  The district court agreed and granted St. Michael's motion for summary judgment.  Shackleford timely appeals.


## II. DISCUSSION

We review the district court's grant of summary judgment de novo, applying the same standards as the court below.  See Matagorda County v. Law, 19 F.3d 215, 217 (5th Cir. 1994).  Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

On appeal, Shackleford argues that her current malpractice suit is not encompassed by the Settlement Agreement because St. Michael Healthcare Center was not a party to the agreement and because it is a separate and distinct entity from St. Michael Hospital.  This court need not untangle the web of corporate entities because Shackleford waived this issue by failing to raise it below.  When reviewing a grant of summary judgment, we will not consider arguments on appeal that were not presented below in response to the summary judgment motion.  See Haubold v. Intermedics, Inc., 11 F.3d 1333, 1336 (5th Cir. 1994).

Shackleford next argues that the Settlement Agreement did not serve to release St. Michael from medical malpractice claims

4

arising from her surgery. We disagree. The plain language of the agreement and Texas law dictate a finding that Shackleford effectively released St. Michael.

To release a claim, the release document must "mention" the claim. See Memorial Medical Center of East Texas v. Keszler, 943 S.W.2d 433, 434 (Tex. 1997); Victoria Bank and Trust Co. v. Brady, 811 S.W. 2d 931, 938 (Tex. 1991). The Texas Supreme Court has rejected the notion that a claim is not "mentioned" unless it is specifically enumerated. See Keszler 943 S.W.2d at 435. In Keszler the court found that a doctor who executed a release with his employer-hospital after the hospital took "corrective action" against him, effectively released the hospital from a later tort action based on his on-the-job exposure to hazardous chemicals. The court noted that the agreement released all parties from claims "relating to" their relationship as employer and employee. The court found that Keszler's exposure to toxic chemicals was "related to" his relationship with the hospital and therefore within the scope of the earlier release.

We find Keszler persuasive when applied to the facts in this case. We agree with the district court that the language of the Settlement Agreement is unambiguous and, therefore, its interpretation is a matter of law. See Keszler, 943 S.W.3d at 434. The Settlement Agreement released the parties from all claims "directly or indirectly attributable" to the "transactions described in the pleadings," i.e., the slip-and-fall accident. The agreement also released the parties from all claims "known or

5

unknown, present or future" arising out of the accident. We find that the plain language of the agreement "mentions" Shackleford's current claim against St. Michael. The second operation is clearly attributable to her slip-and-fall accident and would not have been necessary absent that accident. Shackleford effectively released St. Michael from responsibility for her current injuries by signing the Settlement Agreement.

Shackleford argues that <u>Victoria Bank and Trust Co. v. Brady</u>, 811 S.W.2d 931 (Tex. 1991), dictates the conclusion that St. Michael was not effectively released from this claim. We find this argument unpersuasive. In that case, Brady, in two separate transactions with Victoria Bank, borrowed a $150,000 and established a line of credit. A dispute arose regarding the loan, and the parties entered into a settlement agreement releasing both sides from liability based on "the...loan transaction." <u>Brady</u> 811 S.W.2d at 937. When another dispute arose regarding the line of credit, the bank argued that the earlier agreement released the bank from any actions based on either the credit line or the loan. The Texas Supreme Court disagreed, finding that the only claim mentioned in the agreement dealt with the loan, not with the credit line. See <u>id</u> at 939.

Such is not the case here. The agreement signed by Shackleford effectively released St. Michael from all claims "directly or indirectly attributable" to the slip-and-fall accident. We agree with the district court that any injuries Shackleford suffered as a result of the second operation were

6

indirectly attributable to the original accident.  Therefore, Shackleford's current claim is barred by the Settlement Agreement.

## III. CONCLUSION

For the above stated reasons, we AFFIRM.

7