# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-581

**LEXINGTON INSURANCE COMPANY**

**VERSUS**

**M. W. KELLOGG CONSTRUCTORS, INC., ET AL.**

************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 1996-904,
HONORABLE D. KENT SAVOIE, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
### JUDGE

************

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and James T. Genovese, Judges.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

**Donald A. Hoffman**
**Mary Ann Wegman**
**Hoffmann Seydel, LLC**
**701 Poydras Street, Suite 3770**
**New Orleans, Louisiana  70139**
**(504) 587-0900**
**Counsel for Plaintiff:**
    **Lexington Insurance Company**

**Kirk A. Bergeron**
**Attorney at Law**
**343 E. Woodgate Court**
**Baton Rouge, Louisiana  70808**
**(225) 769-0784**
**Counsel for Plaintiffs/Appellants:**
    **Reliance Insurance Company**
    **Insurance Company of North America**

**Robert J. Williams**
**L. Donald Foreman**
**L. Donald Foreman, L.L.C.**
**4830 Lake Street**
**Lake Charles, Louisiana 70605**
**(337) 562-1116**
**Counsel for Plaintiffs/Appellants:**
      **Insurance Company of North America**
      **Reliance Insurance Company**

**John B. Scofield**
**Robert E. Landry**
**Phillip DeVilbiss**
**Scofield, Gerard, Veron, Singletary & Pohorelsky**
**Post Office Box 3028**
**Lake Charles, Louisiana 70602**
**(337) 433-9436**
**Counsel for Defendants/Appellees:**
      **Westlake Petrochemicals, LP**
      **WPE Corporation**

**Ronald Restrepo**
**Stephen H. Lee**
**Doyle, Restrepo, Harvin & Robbins, L.L.P.**
**600 Travis Street, Suite 4700**
**Houston, Texas 77002**
**(713) 228-5100**
**Counsel for Defendants/Appellees:**
      **Westlake Petrochemicals, LP**
      **WPE Corporation**

**Robert E. Barkley, Jr.**
**Barkley & Thompson**
**1515 Poydras Street, Suite 2350**
**New Orleans, Louisiana 70112**
**(504) 595-3350**
**Counsel for Defendant:**
      **Westinghouse Electric Company**

**David R. Frohn**
**Frohn & Thibodeaux**
**Post Office Box 2090**
**Lake Charles, Louisiana 70602-2090**
**(337) 433-5523**
**Counsel for Defendant:**
      **Toshiba International Corporation**

**Christopher M. Trahan**
**Raggio, Cappel, Chozen & Berniard**
**Post Office Box 820**
**Lake Charles, Louisiana 70602**
**(337) 436-9499**
**Counsel for Defendant:**
      **Dashiell Corporation**

SULLIVAN, Judge.

Reliance Insurance Company in Liquidation (Reliance) appeals the dismissal of its non-cooperation claim against its insureds, Westlake Petrochemicals, LP and WPE Corporation (Westlake), on an exception of *res judicata*. Westlake has also appealed, seeking reversal of an evidentiary ruling by the trial court. For the following reasons, we affirm in part, reverse in part, and remand.

## Procedural History

On February 24, 1995, an electrical motor failed at Westlake's ethylene plant in Calcasieu Parish, Louisiana, causing extensive physical damage and an interruption of production. This incident resulted in at least three lawsuits, the instant suit filed in Calcasieu Parish and two suits filed in the State of Texas. A release executed by Reliance and Westlake in the second of the two Texas suits is the subject of the present exception of *res judicata.*

Within one year of the electrical failure, three of Westlake's insurers—Reliance, Lexington Insurance Company (Lexington), and Insurance Company of North America (INA)—made payments to Westlake totaling $4,500,000.00.[1] On February 23, 1996, Lexington filed the present subrogation claim against several parties alleged to be at fault in the incident.[2] On October 21, 1996, Reliance and INA were added as plaintiffs.

---

[1]Plaintiffs' initial and first supplemental petitions identify those insurance payments as follows: Lexington, $2,500,000.00; Reliance, $1,500,000.00; and INA, $500,000.00. Subsequent supplemental petitions increased those amounts as to Reliance and INA, presumably reflecting additional payments Westlake received after settlement of the federal litigation in Texas.

[2]Those parties whose fault allegedly contributed to the 1995 motor failure were identified as The M. W. Kellogg Company (Kellogg) and KCI Constructors, Inc. (KCI), the designers and builders of Westlake's ethylene plant; Toshiba International Corporation, the manufacturer of the 300 hp motor that failed; Westinghouse Electric Corporation, the manufacturer of the motor's starter; Dashiell Corporation, the company that tested the plant's electrical systems before its start-up; and Bufete Industrial Disenos y Proyectos, S.A. Kellogg and KCI were dismissed on an unrelated exception of *res judicata*, as more fully explained in this opinion.

Meanwhile, nine days before Lexington filed the present subrogation action, on February 14, 1996, one of the defendants herein, The M. W. Kellogg Company (Kellogg), filed suit in Texas state court, seeking a declaration that a 1993 agreement it reached with Westlake settling a dispute regarding the construction of the plant barred any subrogation claims of Westlake's insurers against Kellogg arising out of the 1995 motor failure. Kellogg prevailed in the Texas suit, and that judgment, which was affirmed at *Lexington Insurance Co. v. The W. M. Kellogg Co.*, 976 S.W.2d 807 (Tex.App.—Houston [1st Dist.] 1998), formed the basis of the dismissal from the present litigation of Kellogg and another defendant, KCI Constructors, Inc.

Also during the pendency of the present subrogation suit, on May 8, 1998, Westlake sued Reliance, INA, and other entities associated with INA in federal district court in Texas, contending that its insurers failed to fully cover its losses caused by the electrical motor failure. Approximately one year later, on June 11, 1999, the parties reached a settlement in that suit, resulting in an additional payment to Westlake of $9,850,000.00. That release, more fully described below, is the subject of Westlake's present exception of *res judicata*.

On September 17, 2004, over five years after the settlement in the Texas federal suit, Reliance added Westlake as a defendant in the present action. Reliance alleged that Westlake, *in bad faith*, breached its legal duty to cooperate in Reliance's investigation into the cause of Westlake's loss, as required under its insurance policy and under the various subrogation agreements executed. Specifically, Reliance alleged that Westlake failed to comply with Reliance's requests for documents and for interviews with key employees, failed to comply with a subpoena and other discovery matters, provided other defendants in the subrogation claim with

2

documents that it refused to produce to Reliance, and refused to execute documents acknowledging its receipt of all payments. Reliance sought dissolution of its insurance policy and a money judgment to include the full sum it paid to Westlake in connection with the loss, the costs of adjustment and litigation, including attorney and consultant fees, and legal interest on all payments and expenses.

Westlake responded with an exception of *res judicata*, arguing that the 1999 settlement agreement in the Texas suit barred Reliance's present claim.[3] In support of its exception, Westlake introduced correspondence between the parties dating from 1996-1998 showing that most of the conduct that formed the basis of Reliance's claim occurred before the 1999 settlement, and in particular, a letter dated June 9, 1998, in which counsel for Reliance threatened to place Westlake "on notice of default under . . . the insurance policies in question" unless Westlake fully complied with its duty to cooperate in Reliance's investigation of the cause of the insured loss. Westlake also cited the language of a mutual release in the settlement agreement, which provided:

> The Carriers [Reliance and INA] hereby irrevocably and unconditionally release, acquit and forever discharge Westlake and all of its present or former officers, directors, employees, shareholders, representatives, attorneys, successors and assigns of and from any and all claims, demands, liabilities and causes of action of every kind and character, both known and unknown, which the Carriers *have or might have ever had with respect to the events and claims made the basis of Cause No. H-98-1418* [the docket number of the federal suit in Texas].

(Emphasis added.)

---

[3]Westlake also filed an exception of prescription, which the trial court considered to be moot after it granted Westlake's exception of *res judicata*. Due to the absence of any trial court ruling on prescription, we decline to address that issue here, finding it should more appropriately be decided on remand.

In opposition, Reliance argued that the 1999 settlement agreement, by its express terms, covered only those claims asserted in the federal litigation, and neither the petition nor subsequent pleadings in that case raised the issue of Westlake's failure to cooperate. Reliance further argued that its present claim arises out of Westlake's conduct in this subrogation suit, which involves different issues and different evidence than that in the federal litigation. Reliance also contended that Westlake committed an ongoing breach of its duty to cooperate, which extended through October of 2004, when Westlake finally produced certain documents that it either had withheld or had previously denied existed. In particular, Reliance pointed out that in January of 1996 it had requested "[a]ll documentation of testing of the electrical switch gear in question." According to Reliance, however, Westlake did not produce a crucial electrical coordination study conducted in 1995 until October of 2004, despite Westlake's assurances in June of 1998 that all relevant documents had been produced and that many requested documents did not exist.

After a hearing on December 9, 2004, the trial court granted Westlake's exception of *res judicata*, relying primarily on the correspondence of June 9, 1998 as evidence that Reliance's non-cooperation claim arose prior to the 1999 settlement and, therefore, was governed by that agreement.[4] Reliance has appealed, and Westlake has answered the appeal, contending that the trial court erred in admitting into evidence certain documents pertaining to mediation proceedings in the Texas suit.

---

[4]After the trial court's ruling on this exception, Lexington, who was not a party in the federal Texas suit and the corresponding release, filed a similar non-cooperation claim against Westlake.

4

**Opinion**

The 1999 settlement agreement provides that it "shall be construed and interpreted in accordance with the laws of the State of Texas." According to La.Civ.Code art. 3540 (emphasis added), "[a]ll other issues of conventional obligations are governed *by the law expressly chosen* or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." In the present case, neither party contends that application of Texas law will contravene the public policy of another state; indeed, each party vigorously argues that Texas law supports its position.

In *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex.1991) (citations omitted) (emphasis added), the Texas Supreme Court stated:

> In order to effectively release a claim in Texas, the releasing instrument must "mention" the claim to be released. *Even if the claims exist when the release is executed, any claims not clearly within the subject matter of the release are not discharged.* Furthermore, general categorical release clauses are narrowly construed.

In *Memorial Medical Center of East Texas v. Keszler*, 943 S.W.2d 433, 435 (Tex.1997), the Texas Supreme Court somewhat tempered this language by recognizing that, while a claim must be "mentioned," it need not be "specifically enumerated" to be released. Additionally, the Texas Supreme Court has stated that the parties are not required to "anticipate and identify each potential cause of action *relating to the release's subject matter*." *Keck, Mahin & Cate v. Nat. Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 698 (Tex.2000) (emphasis added).

Both Reliance and Westlake cite *Keszler*, 943 S.W.2d 433, in support of their respective positions. In *Keszler*, after a physician sued the hospital that revoked his

privileges in a "corrective action," the parties reached a compromise whereby the hospital paid the physician $225,000.00. After that settlement, the physician sued the hospital for his alleged exposure to a toxic sterilizing agent during his employment there. The court then had to decide whether the release in the lawsuit about the corrective action sufficiently "mentioned" the toxic exposure claim so as to bar that claim. In settling the corrective action claim, the parties executed two documents whose terms were not coextensive. A "Settlement Agreement" stated that Dr. Keszler intended to release any and all claims, demands, and causes of action, whether known or unknown, "*arising out of and in connection with the corrective action*" taken by the hospital. *Id*. at 434 (emphasis added). A separate document entitled "Release," however, not only mentioned any claims arising out of the corrective action, but also stated that it applied to:

> *any other matter relating to [Keszler's] relationship with [Memorial]*, including but not limited to his relationship as a member of the staff or as a physician having clinical privileges, *it being the intent of [Keszler] to release all claims of any kind or character which he might have against [Memorial]* . . . .

*Id.* (alteration in original). The court first held that the "Settlement Agreement" alone was not controlling because that interpretation would nullify the "Release." The court then concluded that the toxic exposure claim was "mentioned" in the "Release" because that claim arose out of the doctor's relationship with the hospital, notwithstanding that it was not specifically enumerated.

In the present case, the trial court's reasons indicate that it focused almost exclusively on correspondence tending to show that Reliance's non-cooperation claim arose before the settlement agreement was executed. However, as the above

6

jurisprudence illustrates, the court must also consider whether the claim is part of the "subject matter" of the release.

In Paragraph 4 of the release at issue here, the parties make a general statement that the *purpose* of the agreement is to settle and compromise disputed claims "*against the Carriers* [Reliance and INA] as of the date of this instrument." (Emphasis added.) Paragraph 2 contains a mutual release in which the Carriers also release Westlake from any claims that they have or might have ever had "with respect to the events and claims *made the basis of Cause No. H-98-1418.*" (Emphasis added.)

It is clear that the release in the present case is not as broad as the one construed in *Keszler*. Here, the parties have not chosen to release any and all claims arising out of their relationship; rather, the release covers only those claims made the basis of the federal litigation. As Reliance points out, the federal litigation concerned Westlake's claim that it had not been compensated to the full *extent* of its loss under the terms of its policy, whereas the subrogation suit in state court concerns the *cause* of that loss.

In the federal suit, Westlake made two basic claims against Reliance and INA: that the insurers had not paid the full sum due under their policies for the loss in question and that they violated certain Texas statutes regulating the payment of claims under insurance policies. The settlement of that suit resulted in Reliance and INA paying Westlake an additional $9,850,000.00. We find that any *defense* Reliance and INA could have raised to the payment of this additional sum under their policies—including the non-cooperation of their insured—was part of the "subject matter" of the release. Thus, the trial court was correct, in part, that Reliance cannot now seek to rescind that settlement based upon a defense that could have been raised

7

in the federal litigation. Reliance's claim that it is entitled to dissolution of its policy and a return of the settlement proceeds paid pursuant to that policy, as well as the fees and costs incurred in federal court, is presently unfounded, as it was covered by the prior release.

However, Westlake did have a duty under its policy, as Reliance's subrogor, to do nothing that would impair Reliance's rights as subrogee. *See also Fair Grounds Corp. v. ADT Sec. Sys.*, 97-2375 (La.App. 4 Cir. 9/23/98), 719 So.2d 1110, *writ denied*, 98-3098 (La. 2/5/99), 738 So.2d 6. This obligation concerns Reliance's claims against those parties that *caused* the accident, which claims were not at issue in the federal suit. Accordingly, we cannot agree that Westlake's conduct as Reliance's subrogor was part of the "subject matter" of the federal release, even if some of that conduct occurred before the execution of the settlement agreement. (We note that Reliance has alleged an ongoing breach of Westlake's duties as a subrogor that continued at least through 2004). Thus, Reliance may proceed with its non-cooperation claim, but it may recover, and will have to prove, only those damages, expenses, and fees directly attributable to Westlake's impairment of its ability to collect against those responsible for the loss.

Westlake has answered the appeal, asking that we overrule the trial court's admission of certain documents relating to the mediation proceedings in the federal litigation. However, the trial court's comments in its reasons for ruling indicate that it did not consider those documents in its decision, and we find that, while relevant, they are unnecessary to our ruling on appeal. Accordingly, we decline to address this issue here.

8

**Decree**

For the above reasons, the judgment of the trial court is affirmed in part and reversed in part, and the case is remanded for proceedings consistent with this opinion. Costs of this appeal are assessed equally to Reliance and Westlake.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**