# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00264-CV

**American Bank of Commerce, Appellant**

**v.**

**Danny S. Davis, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-03-003789, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This case involves the scope of a release of claims executed in conjunction with a settlement agreement. The dispute is whether the parties intended the release to apply to a particular promissory note. In a previous appeal, the language of the release was found to be ambiguous. On remand, a jury found against the appellant and the district court entered judgment finding that the promissory note had been released. We affirm.

Appellant American Bank of Commerce and appellee Danny S. Davis were parties to a series of loans involving a restaurant venture in Austin, Texas, called El Dorado Bar and Grill. The restaurant was not successful. The owners sought bankruptcy protection, and the Bank foreclosed its lien on the property and ultimately sold it to a third party. After the sale, the Bank, El Dorado Bar and Grill, Craig Gatewood (Davis's business partner in the restaurant venture), and Davis entered into a "Mutual Release Agreement" dated September 5, 2003.

Prior to the execution of the Release, Davis's debts to the Bank included his $100,000 guarantee on an $887,000 promissory note that had been assumed by El Dorado Bar and Grill, a $50,000 note made by El Dorado Bar and Grill and guaranteed by Davis (which included disputed guarantee of all other debts of the restaurant), and a $500,000 promissory note that Davis executed as primary obligor, the proceeds of which were used in connection with finish-out and operating expenses of the restaurant. The dispute in this case concerns the $500,000 note. The Mutual Release Agreement provided:

> Mutual Release. Lender, Debtor, Borrower, and Guarantor do hereby release, remise, acquit and forever discharge each other, and their respective heirs, successors, and assigns, from any and all liabilities, claims, losses, costs and expenses, demands, and causes of action whatsoever. . . . Lender, Borrower, Guarantor, and Craig Gatewood warrant that this mutual release is intended to be of the broadest nature and to be dispositive of all matters involving them, known or unknown.

The Bank asserted that this broad language in the Release must be construed in the context of the recitals that precede it. *See Memorial Med. Ctr. v. Keszler*, 943 S.W.2d 433, 434-35 (Tex. 1997) (to release a claim, the releasing document must "mention" it). The recitals specifically refer to the $887,000 note and the $50,000 note—but not the $500,000 note. Davis, in turn, asserted that the $500,000 note is incorporated in the recital that alleges "certain disputes exist between the parties and certain debts remain outstanding." The $500,000 note was an outstanding debt of Davis made in connection with the restaurant venture when the Release was executed.

The district court initially granted summary judgment in favor of the Bank, holding that the $500,000 note was outside the scope of the Release as a matter of law, and entered judgment against Davis. Davis appealed, and this Court reversed the summary judgment.

2

*See Davis v. American Bank of Commerce*, No. 03-04-00482-CV, 2005 Tex. App. LEXIS 4902 (Tex. App.—Austin June 23, 2005, pet. denied) (mem. op.). This Court held that the Release was ambiguous as to whether it encompassed the $500,000 note. *Id.* at \*7-9. The case was remanded to the district court to resolve the fact issue of whether the parties intended the Release to apply to the $500,000 note. *Id.* at \*11.

The case was tried to a jury in January 2007. The jury answered in favor of Davis on the sole question submitted: "Did ABC Bank and Danny S. Davis intend to bind themselves to a Mutual Release Agreement that included the release of the $500,000 promissory note?" The district court entered judgment on the verdict on February 22, 2007, and awarded Davis court costs and attorneys' fees. The Bank appeals.

The Bank argues that the evidence is legally and factually insufficient to support the district court's finding on the parties' intent. In reviewing legal sufficiency, we view the evidence in the light most favorable to the court's finding and will overrule the challenge as long as the evidence offered to support the finding is more than a scintilla. *See Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). In reviewing factual sufficiency, we consider and weigh all the evidence in the record and will reverse the verdict only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

Although ambiguous, the Release itself constitutes some evidence of the parties' intent. The submitted jury question included instructions permitting the jury to consider the language of the Release in reaching its verdict: "You must decide the meaning of the contract

3

language by determining the intent of the words used in the agreement. . . . You must also consider the entire agreement and all the provisions thereof, so as to not render any single provision meaningless."[1] The Release states that it is "intended to be of the broadest nature and to be dispositive of all matters involving [the parties], known or unknown." Davis testified that he understood the Release to encompass the $500,000 note, and none of the written correspondence between the parties in the record indicates that Davis had a different intent. The Bank's representative at trial testified that the Bank intended the Release not to include the $500,000 note. However, it is within the purview of the jurors to judge the credibility of the witnesses and the weight to give their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). Correspondence from the Bank to Davis prior to the Release's execution indicated that the Bank was willing to accept a loss with regard to the El Dorado Bar and Grill. A May 15, 2003 e-mail from the Bank expressed the hope that the price obtained in the sale of the restaurant would be "a price that will not expose [Davis] to further liability." Following the sale, the Bank alleged in a July 29, 2003 e-mail that it was "out about $236,000" and yet stated that it was the Bank's "intention, however, to relieve [Davis] and [Gatewood] of all remaining liability."

While there was a substantial amount of evidence admitted to the effect that the Bank did not intend to release the $500,000 note as part of the settlement and that Davis was aware of this fact, the jury did not see it that way. The jury weighed the evidence and found that the parties intended the release to be as broad as its literal language. While reasonable minds might differ as to the weight to be given the evidence in this case, there is some evidence supporting the jury's finding, and we cannot say that the finding is so against the overwhelming weight of the evidence

---

[1] The Bank did not object to these instructions.

as to be clearly wrong and unjust. Therefore, we conclude that the evidence is legally and factually sufficient to support the jury's finding that the parties intended the Release to include the $500,000 promissory note within its scope.

The Bank next contends that since it expressed its intention not to release the $500,000 note and Davis was aware of that expressed intention but remained silent, Davis is bound as a matter of law by the Bank's expressed intent with respect to the note. The Bank's contention reflects the following legal principle:

> Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made . . . that party did not know of any different meaning attached by the other, and the other knew the meaning attached by the first party . . . .

Restatement (Second) of Contracts § 201(2) (1979). However, the jury found contrary to the Bank's contention. In finding that the Bank *did* intend the Release to include the $500,000 note, the jury necessarily found that this Restatement rule—raised on appeal by the Bank—is not applicable to the release of the $500,000 note. We further conclude that the evidence in the record does not conclusively establish both that the Bank did not intend to release the $500,000 note and that Davis was aware of such intention and yet remained silent. The evidence would have to conclusively establish both facts before the Restatement could be applied here to overturn the jury's verdict. We, therefore, are not persuaded that the above-quoted Restatement rule requires reversing the jury's finding in this case.

Next, the Bank asserts that there was no meeting of the minds as to the Release and that the trial court erred in not submitting a jury question on the Bank's requested issue on

5

meeting of the minds.[2] A "meeting of the minds" is generally a required element of an enforceable contract. *See Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.). According to the Bank, there was no meeting of the minds on a release of the $500,000 note. However, we have already concluded that the evidence is sufficient to support the jury's finding that both parties intended to release the $500,000 note. Likewise, the evidence does not conclusively establish that the Bank and Davis had no meeting of the minds regarding whether the Release included the $500,000 note within its scope. In addition, the district court did not err in declining to submit the Bank's jury question on meeting of the minds. "A judgment shall not be reversed because of the failure to submit other and various phases or different shades of the same question." Tex. R. Civ. P. 278. The court submitted the controlling issue—whether the parties intended to include the $500,000 note within the scope of the Release. Given the jury's finding on this question, the district court's refusal to submit an additional question on whether there was a meeting of the minds as to the same matter was not reversible error.[3]

In its final point on appeal, the Bank argues that the district court erred in awarding Davis attorneys' fees. The court's judgment states: "The court finds that [Davis] and [the Bank] have agreed that [Davis] should be awarded costs and attorney fees as reflected herein." The record is silent as to any such agreement or stipulation. However, the Bank has not challenged the court's

---

[2] The Bank's requested jury question was as follows: Did the parties reach a mutual agreement concerning the purpose and effect of the "Mutual Release Agreement"?

[3] The Bank argues that a question on whether there was a "meeting of the minds" would not be redundant because a negative response would entitle the Bank to complete relief from the Release, a remedy not available from the submitted jury question. However, the Bank does not identify any issue for which there allegedly was no meeting of the minds other than the issue of whether the $500,000 note was intended to be within the scope of the Release, an issue for which the jury gave an affirmative answer.

6

finding regarding the Bank's agreement to pay attorneys' fees. *See* Tex. R. App. P. 33.1. The Bank cannot, on appeal, seek to overturn an award that the trial court expressly found to be agreed where there is no objection or challenge to the finding of an agreement.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   December 31, 2008