

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00211-CV

_____

THE FONTANA EVOLUTION, LLC AND BO FONTANA, Appellants

V.

SCP DISTRIBUTORS, LLC DBA DFW STONE SUPPLY, LLC, Appellee

---

On Appeal from County Court at Law No. 3
Tarrant County, Texas
Trial Court No. 2020-002711-3

---

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellee SCP Distributors, LLC sued Appellants the Fontana Evolution, LLC and Bo Fontana (together, Fontana) to collect an unpaid debt, and SCP moved for summary judgment on its debt-related claims. The parties entered into a Settlement Agreement providing for payment of the debt by a specified deadline in exchange for SCP's dismissal and release of its claims. If Fontana did not pay by the deadline, though, the parties agreed that SCP would be entitled to judgment on its pending summary judgment motion. When Fontana failed to pay, SCP resumed prosecution of its debt-related claims, adding to them breach of the parties' Settlement Agreement. Fontana responded by arguing that SCP had released its debt-related claims when it executed the Settlement Agreement. The trial court granted summary judgment for SCP.

Fontana now urges this court to adopt its interpretation of the Settlement Agreement by holding that the release provision took effect immediately upon execution. But adopting this interpretation would require us to disregard the plain language of the Settlement Agreement. The agreement contemplates—nay, expressly provides—that SCP's claims would live on after the execution of the Settlement Agreement and that SCP would release its claims only after Fontana made and SCP "recei[ved] final payment." And it is undisputed that SCP never "recei[ved] final payment."

Because SCP's execution of the Settlement Agreement did not immediately release its debt-related claims, because this was the sole basis for and evidence of Fontana's affirmative defense of release, because Fontana does not dispute its liability for SCP's debt-related claims absent release, and because the absence of a release disposes of Fontana's remaining arguments on appeal, we will affirm.

## I. Background

The Fontana Evolution, LLC bought materials on credit from SCP Distributors, LLC. The materials were worth $38,357.85, and Bo Fontana personally guaranteed the loan. When Fontana failed to pay the debt, SCP filed a suit on a sworn account asserting claims for, among other things, breach of contract and breach of guaranty agreement. *See* Tex. R. Civ. P. 185.

Later, Fontana's failure to respond to written discovery resulted in deemed admissions that Fontana had failed to pay the $38,357.85 debt. *See* Tex. R. Civ. P. 198.2(c). Relying on these deemed admissions, SCP moved for summary judgment on its claims in March 2021.[1] It sought recovery of the debt plus interest and $1,830 in affidavit-supported attorney's fees. Fontana did not respond to the motion.

Then, the day before the summary judgment was set for submission, the parties signed a Settlement Agreement:

---

[1]Specifically, SCP moved for summary judgment on its claims for breach of contract and breach of guaranty agreement.

PAYMENT

1. By execution of this Agreement, Plaintiff [i.e., SCP] agrees to accept and Defendants [i.e., Fontana] agree, jointly and severally, to pay $40,187.85 on or before July 30, 2021. . . . .

. . . .

DEFAULT

3. If the full amount is not received by July 30, 2021, Defendants will be in default without further notice of default . . . .

4. Defendants further agree . . . that upon default, the full principal amount of $38,357.85, interest, and attorney's fees will be due and owing, less any payments made hereunder, *and the Plaintiff's pending Motion for Summary Judgment shall be granted as filed.*

RELEASES

5. *In consideration for the payment or payments described in paragraph 1 and the agreements and performance of future obligations as described in this Agreement,* Plaintiff and Defendants . . . completely RELEASE, DISCHARGE, and RELINQUISH each other . . . from any and all past, present, or future claims . . . [that] in any way grow out of, or that are the subject of the Lawsuit, the Debt, the item or items made the basis of the Debt, and the Invoices.

DISMISSAL OF SUIT/RELEASE OF AGREED JUDGMENT

6. *Within sixty (60) days of receipt of final payment,* Plaintiff or its attorneys will file a Notice of Non-Suit dismissing with prejudice the Lawsuit . . . . [Indentation altered and emphasis added.]

It is undisputed that Fontana did not meet the July 30 deadline and that it paid only $15,000 of the debt.

After the July 30 deadline had passed, the parties' attorneys exchanged emails. Fontana's counsel acknowledged that his client was "only able to wire $15,000," explaining that "the closing that [Fontana] was relying upon [to pay the debt] did not close as scheduled." He indicated, though, that the closing was scheduled to "occur

on September 2, 2021," and he proposed that Fontana have "the remaining $25,187.85 . . . wired from the title company at closing." SCP agreed to accept the payment on the condition that Fontana would pay an additional $600 in interest "based on the contractual interest rate." According to Fontana, this email exchange amended the Settlement Agreement by tying Fontana's deadline for payment to the closing of its anticipated real estate transaction, regardless of when (or if) that transaction closed. And because the real estate transaction did not close on September 2 as scheduled, Fontana did not pay.

Several more months went by without payment until finally, in January 2022, SCP amended its petition to acknowledge the $15,000 payment, and to allege breach of the Settlement Agreement. SCP then filed a supplement to its still-pending summary judgment motion.[2] It sought judgment not only on its debt-related claims—which were still supported by deemed admissions—but also on its breach-of-

---

[2]After SCP filed a supplement to its summary judgment motion, it set the motion for submission and served Fontana with notice of the submission. On appeal, Fontana argues that SCP's notice of submission did not reference the supplement and thus "did not provide any notice that its Supplement to Motion for Summary Judgment was set to be considered by the trial court" in violation of Texas Rule of Civil Procedure 166a. But Fontana did not raise this argument before the trial court, and its response to SCP's supplemental motion reflects that it had actual notice that the supplement would be considered by the trial court as part of the summary judgment submission. Moreover, Fontana has not cited any case law or other authority to support the idea that a notice of submission must list each supplement to the underlying motion.

5

settlement claim. Fontana responded[3] by arguing that (1) SCP had contractually released its debt-related claims when it executed the Settlement Agreement and (2) the parties had modified the Settlement Agreement through their emails so there was a fact issue regarding Fontana's alleged breach of the agreement.[4]

The trial court granted summary judgment for SCP without specifying the basis for its judgment. It awarded SCP the remaining principal of the debt—$23,357.85—plus pre- and post-judgment interest, plus $1,830 in attorney's fees for the work performed on SCP's debt claims.

## II. Discussion

On appeal, Fontana raises numerous challenges to the summary judgment. In two issues, which we construe as three, it argues that (1) the language of the Settlement Agreement established that SCP had released its debt-related claims, (2) because the debt-related claims had been released, the trial court should not have

---

[3]Fontana filed its response less than seven days before the summary judgment submission date. *Cf.* Tex. R. Civ. P. 166a(c) ("Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response."). "[W]e presume that [the] trial court did not consider a late-filed response absent an affirmative indication in the record." *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 260–62 (Tex. 2020). But the trial court's summary judgment order states that it "considered the pleadings[,] . . . the evidence, and the arguments of counsel." Because this statement is "without qualification or limitation," it "overcomes th[e] presumption" that the trial court did not consider Fontana's late-filed response. *Id.* at 261–62.

[4]In support of its summary judgment response, Fontana filed a declaration that the real estate transaction—to which its payment was allegedly tied—was scheduled to close "in early to mid-March, 2022."

awarded SCP its attorney's fees for those claims; and (3) the parties' emails modified the Settlement Agreement and created a fact issue as to whether Fontana breached that modified Agreement. The first issue is dispositive—the Settlement Agreement does not raise a fact issue regarding the alleged release of SCP's claims.

## A. Standard of Review

We review a summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *see 20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). When, as here, the trial court does not specify the basis for its judgment, we must affirm the judgment if any of the grounds advanced by SCP are meritorious. *See Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017); *Grant v. Wind Turbine & Energy Cables Corp.*, No. 02-21-00036-CV, 2022 WL 2840142, at *10 (Tex. App.—Fort Worth July 21, 2022, no pet.) (mem. op.).

As the plaintiff, SCP was entitled to summary judgment on its causes of action if it conclusively proved all essential elements of its claims. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). Fontana does not dispute that SCP conclusively established all essential elements of its debt-related claims.

But even if a plaintiff has established the elements of its claims, a defendant may oppose a plaintiff's motion for summary judgment by raising a fact issue on an affirmative defense. In such instances, the defendant bears the burden to come

7

forward with summary judgment evidence sufficient to raise a fact issue on each element of the affirmative defense. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 180 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

## B.    Release

To oppose SCP's motion for summary judgment, Fontana relied on the affirmative defense of release, and it bore the burden to raise a fact issue regarding this defense.[5] *See* Tex. R. Civ. P. 94; *Brownlee*, 665 S.W.2d at 112. Fontana's sole evidence of release was the language of the Settlement Agreement. Fontana argued that the Settlement Agreement effected an immediate release of SCP's debt-related claims, whether or not Fontana ultimately paid under the terms of that agreement.

Settlements and releases are contracts, and the interpretation of such contracts presents a question of law. *Mem'l Med. Ctr. of E. Tex. v. Keszler*, 943 S.W.2d 433, 434

---

[5]Although Fontana did not plead the affirmative defense of release, SCP did not object on this basis. Our sister court has held that an unpleaded affirmative defense may serve as a basis for avoiding summary judgment when it is raised in the nonmovant's responsive motion and the movant does not object. *See Gilbreath v. Steed*, No. 12-11-00251-CV, 2013 WL 2146230, at *5 (Tex. App.—Tyler May 15, 2013, no pet.) (mem. op. on reh'g) (addressing merits of appellant–nonmovant's affirmative defense and holding that, when nonmovant raised unpleaded affirmative defense in response to summary judgment motion but movant did not object, the nonmovant was not prohibited from relying on the affirmative defense); *cf. Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494–95 (Tex. 1991) (holding that "an unpleaded affirmative defense may . . . serve as the basis for a summary judgment when it is raised in the summary judgment motion, and the opposing party does not object to the lack of a [R]ule 94 pleading in either its written response or before the rendition of judgment"). Regardless, we need not address this issue to dispose of the case. *See* Tex. R. App. P. 47.1.

(Tex. 1997) (noting that rule applies to releases when parties have not contested the validity or claimed ambiguity or fraud in its execution); *see David v. Howeth*, No. 02-20-00078-CV, 2020 WL 6165298, at *6 (Tex. App.—Fort Worth Oct. 22, 2020, pet. denied). "As with all written contracts, we 'must ascertain the true intentions of the parties as expressed' in the [settlement's or] release's language." *David*, 2020 WL 6165298, at *6 (interpreting release and quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)).

To determine the parties' intent, we examine "the entire writing in an effort to harmonize and give effect to all the provisions . . . so that none will be rendered meaningless." *David*, 2020 WL 6165298, at *6 (quoting *Italian Cowboy Partners*, 341 S.W.3d at 333). We consider "the facts and circumstances surrounding the execution of the release," and if the release "refers to a related document, that document should be considered when reviewing a release." *David*, 2020 WL 6165298, at *6 (first quoting *McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 885 (Tex. App.—Dallas 2014, pet. denied); and then quoting *Fritts v. McDowell*, No. 02-16-00373-CV, 2017 WL 3821889, at *5 (Tex. App.—Fort Worth Aug. 31, 2017, pet. denied) (mem. op.)); *see Victoria Bank & Tr. Co. v. Brady*, 811 S.W.2d 931, 939 (Tex. 1991) (construing settlement "as a whole and in light of the surrounding circumstances").

Fontana's interpretation of the release is inconsistent with the release's plain language. The release states that it is "[i]n consideration for the payment or payments

9

described in paragraph 1 and the agreements and performance of future obligations." This statement does not square with Fontana's contention that the release took effect regardless of its "payments described in paragraph 1" or its "perform[ance of its] future obligations."

Moreover, the Settlement Agreement as a whole expressly contemplates that SCP's debt-related claims would remain pending and live on until SCP's "receipt of final payment" for the full settlement sum. Only then, "[w]ithin sixty (60) days of receipt of final payment, [would] Plaintiff or its attorneys . . . file a Notice of Non-Suit dismissing with prejudice the Lawsuit." "If the full amount [wa]s not received by July 30, 2021," though, then "Defendants w[ould] be in default[,]" and "upon default, . . . the Plaintiff's pending Motion for Summary Judgment shall be granted as filed." If SCP's execution of the Settlement Agreement had immediately released SCP's claims, as Fontana asserts, then SCP's "pending Motion for Summary Judgment" could not have been "granted as filed" upon Fontana's breach. Fontana's interpretation would render this portion of the Settlement Agreement meaningless rather than "giv[ing] effect to all the [agreement's] provisions." *See David*, 2020 WL 6165298, at *6 (quoting *Italian Cowboy Partners*, 341 S.W.3d at 333).

The only reasonable interpretation of the release provision that gives full effect to all of the Settlement Agreement's terms is to read the provision as a conditional, future release of SCP's claims if and when SCP "recei[ves] final payment." And it is undisputed that SCP never "recei[ved] final payment." Fontana's own summary

judgment evidence confirmed that, as of August 2021 Fontana had "only [been] able to wire $15,000 of the $40,187.85 settlement payment." The undisputed evidence thus established that the consideration for and conditions of release did not occur— Fontana did not "perform[ its] future obligations as described in [the Settlement] Agreement," and SCP was never in "receipt of final payment." Therefore, SCP's obligation to release and nonsuit its debt-related claims did not arise.[6] *See McWhinney v. Ameriquest Mortg. Sec., Inc.*, No. 01-13-00761-CV, 2014 WL 6853602, at *4 (Tex. App.—Houston [1st Dist.] Dec. 4, 2014, no pet.) (mem. op.) (holding trial court erred by dismissing case where settlement agreement provided for a sequence of events in which "the [debtors] conditioned their agreement to dismiss their claims upon [the bank's] . . . reinstating the mortgage," and the bank's "obligation to reinstate the mortgage was, in turn, conditioned upon the [debtors'] payment of $10,000," but "[n]either of these conditions was fulfilled . . . [so] the [debtors'] obligation to dismiss the case . . . did not arise").

Because the language of the Settlement Agreement did not create a fact issue regarding Fontana's affirmative defense of release, and because the parties do not dispute Fontana's liability for SCP's debt-related claims apart from the alleged release,

---

[6]Although Fontana argues elsewhere in its brief that the parties' emails amended the Settlement Agreement, Fontana does not allege that the purported amendments altered the terms of the release.

11

the trial court did not err by granting SCP summary judgment on its debt-related claims.[7] We overrule Fontana's first issue.

## C. Fontana's Other Arguments

The release issue disposes of Fontana's other issues as well.

In Fontana's second issue, it alleges that the trial court should not have awarded SCP the attorney's fees it incurred in pursuing its debt-related claims because, again, according to Fontana, SCP's debt-related claims had been released. But because Fontana's release theory fails, its challenge to the award of attorney's fees fails as well.

Fontana also challenges SCP's claim for breach of the Settlement Agreement. But we have sustained the trial court's summary judgment on SCP's debt-related claims, so we need not address SCP's claim for breach of the Settlement Agreement. *See* Tex. R. App. P. 47.1.

We therefore overrule Fontana's remaining issues.

---

[7]Fontana's own evidence raises questions regarding the sincerity of its current interpretation of the Settlement Agreement. Attached to Fontana's summary judgment response were copies of the parties' pre-settlement email exchanges. In those emails, Fontana's counsel proposed that Fontana would "agree to the form of a summary judgment," that SCP would "hold this order pending payment in full of the amount awarded in the order," that "if [his] client fail[ed] to pay in full by July 31, 2021, then [SCP] [could] present the order to the Court for entry and obtain all writs and processes as allowed by law," but "if [Fontana] pa[id] in full by July 31, 2021, then [SCP] w[ould] dismiss th[e] lawsuit with prejudice, release any liens (if any), and tear up the summary judgment order." Fontana's appellate arguments deny that this was the intent of the Settlement Agreement, but it does not explain why its interpretation has changed so radically.

12

## III. Conclusion

The parties do not dispute Fontana's liability for SCP's debt-related claims, and the Settlement Agreement cannot be reasonably interpreted to effect an immediate release of SCP's debt-related claims upon execution. Therefore, the trial court did not err by rejecting Fontana's affirmative defense and awarding SCP summary judgment on its debt-related claims. We affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: January 19, 2023

13