

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00307-CV

Daniel W. **HAWKINS**,
Appellant

v.

Bobby **HORTON**,
Appellee

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. 20252A
Honorable Albert D. Pattillo, III, Judge Presiding

Opinion by:      Rebeca C. Martinez, Chief Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                 Lori I. Valenzuela, Justice
                 Sandee Bryan Marion, Chief Justice (Retired)[1]

Delivered and Filed: August 30, 2023

AFFIRMED AS MODIFIED

Daniel W. Hawkins appeals following a bench trial in this suit on a promissory note.  In seven issues, Hawkins challenges the trial court's judgment awarding Bobby Horton damages and attorney's fees and denying Hawkins relief on his counterclaims.  We sustain one issue and apply a settlement credit to reduce the damages award.  We otherwise overrule Hawkins's issues and affirm the trial court's judgment.

---

[1] Retired Fourth Court of Appeals Chief Justice Sandee Bryan Marion sitting by assignment.  *See* TEX. GOV'T CODE ANN. § 74.003.

## BACKGROUND

**A.  Factual Background[2]**

In 2013, Horton sold Hawkins an equipment rental business, General Rental Center ("GRC"), in Ingram, Texas for $875,000.  Hawkins paid $150,000 as a down payment, and Horton financed the remainder.  As part of the financing, Hawkins and Horton entered into a promissory note, which consisted of a printed form with terms handwritten into designated spaces and a handwritten exhibit stating collateral.  The original note specified a ten-year repayment term.  Several months after execution of the promissory note, Hawkins Ward Enterprises, LLC ("HWE") was formed as a limited liability company in the State of Texas.  Its initial members were Hawkins and his then-partner Courtney Ward.  After HWE was formed, Horton transferred the real estate upon which GRC operated to HWE.  On February 10, 2014, Horton and Hawkins entered into a restructuring of the promissory note.  The restructuring agreement consisted of a single handwritten page signed by both Hawkins and Horton.

According to Hawkins's testimony, on December 19, 2014, the parties entered into a release agreement, pursuant to which Horton released Hawkins from liability arising under the original promissory note in exchange for $150,000.  A copy of the purported release was admitted into evidence.  Horton contested any release in his testimony, contending that his signature on the release agreement was a forgery.  A handwriting expert Horton called also testified that, in her opinion, the signature was a forgery.  According to Horton, instead of a release, on December 20, 2014, the parties entered into a second restructuring of the promissory note.

Admitted into evidence was a note dated December 20, 2014.  The note consists of a single handwritten page signed by Hawkins and Horton.  Hawkins affirmed in his trial testimony that the

---

[2] We state undisputed facts without attributing their evidentiary sources.  With disputed facts, we note the dispute and describe the contested evidence either in this section or with our discussion.

signature on the note is his. The December 20, 2014 note states: "Horton agreed to reduce second note dated 2/10/14."[3] The note reflects the application of a $150,000 payment and a note balance of $400,000. Further, the note states a balance reduction of $50,000 for "Lake property trade." The December 20, 2014 note provides: "Terms: $350,000.00 @ 3.5% interest, 15 years, balloon in 5 years." Additionally, the note states under the heading "Security:"

Hawkins agrees to the following security for note:

In the event that Hawkins sales [sic], trade [sic] or in any way transfer [sic] the ownership of General Rental, Hawkins must first pay the balance of this note in full to Horton or Horton's assignee. Horton keeps remainder of $50,000.00 credit at General Rental from original note.

On the back of the December 20, 2014 note is an indorsement: "Pay to the order of GEORGE L. SCHULGEN, JR. and FLORENCE E. SCHULGEN," and below the indorsement is Horton's signature. Also in the record is a promissory note Horton made in favor of George and Florence Schulgen in 2016. The Schulgen promissory note is secured by the December 20, 2014 note between Hawkins and Horton.

Around the end of 2016, Hawkins stopped making payments on the December 20, 2014 note. Hawkins testified that, at the time he stopped making payments, any debt he owed had been released pursuant to a deal he and Horton had made to share profits from the partition and sale of ranchland. Horton denied any such release in his testimony.

**B. Procedural Background**

In May 2020, Horton filed suit against Hawkins and HWE for breach of contract and quantum meruit. Horton alleged that Hawkins owed $352,837 on the December 20, 2014 note. Horton sought a judgment for the unpaid amount and a right to foreclose on Hawkins's ownership

---

[3] Most, but not all, of the words in the note begin with capital letters. We have standardized capitalization for readability.

of HWE and HWE's assets. In December 2020, Ward entered into an agreement with Hawkins and HWE, pursuant to which she purchased Hawkins's equity in HWE and became HWE's sole owner. In December 2020, Horton, Ward, and HWE settled. Pursuant to the settlement agreement, HWE paid Horton $25,000.

Horton filed a motion for leave to file verified denials on the day of trial, February 14, 2022.[4] By this motion, Horton requested leave to file a verified denial as to execution of the December 19, 2014 release and any purported partnership between Hawkins and Horton. On the morning of trial, the trial court considered Horton's motion for leave. After hearing argument, the trial court took the issue under advisement. It never explicitly ruled on the motion then or later. Next, the trial court considered Hawkins's motion to reconsider an earlier summary judgment ruling. Hawkins's counsel argued that Horton's indorsement of the December 20, 2014 note to the Schulgens and his action to give up physical possession of the note to the Schulgens's attorney prohibited Horton from enforcing the note as a "holder," as that term is used in the Uniform Commercial Code ("UCC"), or otherwise. *See* TEX. BUS. & COMM. CODE ANN. §§ 1.201(b)(21), 3.301. The trial court took the matter under advisement.

At the bench trial, Horton, Hawkins, Ward, the Schulgens's attorney, and Horton's handwriting expert testified. Counsel for both parties also testified regarding attorney's fees; however, the trial court prohibited Hawkins from calling Horton's attorney to testify regarding the filing of a purportedly fraudulent lien. At the conclusion of trial, the trial court ruled in favor of Horton. It then signed a final judgment and findings of fact and conclusions of law. The findings of fact and conclusions of law specify that Horton established a right to enforce the December 20,

---

[4] Horton served the motion on the Saturday before trial, and the document was filed when the trial court opened on the following Monday.

2014 note and that Horton established the elements of a breach of contract claim. Hawkins timely appealed.

## DISCUSSION

Some of Hawkins's issues and sub-issues are duplicative. To simplify matters, we address the appeal first as to Horton's claims, considering all arguments Hawkins has presented as to those claims. Hawkins contends that the trial court's judgment must be reversed because Horton cannot enforce the December 20, 2014 promissory note as a matter of law after he indorsed the note and gave up possession. Hawkins also contends that Horton released the debt through the December 19, 2014 release agreement, that Horton released his claims against Hawkins through Horton's settlement with Ward and HWE, and that Horton released any debt owed through the parties' purported partnership to sell ranchland. As to the releases, Hawkins contends that Horton cannot deny his execution of the December 19, 2014 release agreement and the purported partnership because there are no verified denials in the pleadings. The trial court did not explicitly rule on Horton's motion for leave to file verified denials, and, even if it had, Hawkins argues, the trial court abused its discretion by granting leave to file the verified denials so close to trial. Hawkins also argues that the trial court abused its discretion by allowing testimony from Horton's handwriting expert. Hawkins argues that, if we reverse the damages judgment, we should render a take-nothing judgment because Horton cannot establish his quantum meruit claim. In addition, Hawkins contends the amount of damages is unsupported by legally sufficient evidence and that the trial court erred by refusing to apply a settlement credit.

We overrule all of Hawkins's issues directed at the breach of contract claim, any purported releases, and any subsidiary pleading and evidentiary matters. We sustain only Hawkins's issue regarding the settlement credit, and reduce the damages award by $25,000, which represents the settlement amount between Hawkins and HWE. We do not reach Hawkins's issue regarding

Horton's alternative quantum meruit claim because the judgement, as modified, is supported based on the breach of contract claim. *See* TEX. R. APP. P. 47.1.

Next, we consider Hawkins's issue concerning his counterclaims. Hawkins argues the trial court abused its discretion by excluding testimony from Horton's counsel related to a purportedly fraudulent lien. Hawkins contends that without this testimony he could not establish his counterclaim. We overrule this issue.

Last, we consider and reject Hawkins's issue, in which he contends the attorney's fees award to Horton is unsupported by legally sufficient evidence.

**A. Horton's Claim for Breach of Contract**

1. Horton's Authority to Enforce the December 20, 2014 Promissory Note

Horton sued to enforce the December 20, 2014 promissory note. Hawkins complains the trial court abused its discretion by awarding damages to Horton after Horton indorsed the note to the Schulgens and gave up possession. Horton's indorsement and lack of possession are undisputed. It also is undisputed that Horton pledged the December 20, 2014 note as security to the Schulgens and that Horton was not in default on his own note with the Schulgens. Based on this undisputed evidence, the trial court made a finding of fact that Horton had established a right to enforce the December 20, 2014 note. On appeal, Hawkins contends Horton lacked authority to enforce the note because Chapter 3 of the UCC precludes his enforcement.

We construe Hawkins's argument as a challenge to the trial court's determination that Horton had the authority to enforce the December 20, 2014 note. Although the trial court designated this determination as a finding of fact, it is instead a conclusion of law based on the undisputed evidence. *See Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 608 n.1 (Tex. 1979) (trial court's designation of determination as finding of fact or conclusion of law is not controlling on appeal); *cf. FFP Mktg. Co. v. Long Lane Master Tr. IV*, 169 S.W.3d 402, 407 (Tex.

App.—Fort Worth 2005, no pet.) ("The negotiability of an instrument is a question of law."). Consequently, we review Hawkins's issues as a challenge to the trial court's legal conclusion that Horton had the authority to enforce the December 20, 2014 note.

We review a trial court's conclusions of law *de novo* to determine if the trial court drew the correct legal conclusions from the facts. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We uphold legal conclusions if the trial court's judgment can be sustained on any legal theory supported by the evidence. *See id.*

The parties both look to the UCC for their arguments on enforceability. Chapter 3 of the UCC concerns negotiable instruments, and Chapter 9 concerns secured transactions. *See* TEX. BUS. & COMM. CODE ANN. §§ 3.101–3.605, 9.101–9.809. Hawkins contends: "Promissory notes are governed as negotiable instruments under [Chapter 3 of the UCC]." From there, he argues that specific provisions of Chapter 3 limit who may enforce a note to, generally, a "holder" of the note or one in possession of the note. *See id.* §§ 1.201(b)(21), 3.103(d), 3.301. Horton does not address Hawkins's arguments as to Chapter 3; instead, Horton cites to Chapter 9 to argue that only he had the right to enforce the note because the Schulgens's right would arise only in the event of a default by Horton on his note with the Schulgens, which had not occurred. *See id.* §§ 9.202, 9.601, 9.607(a).

Although Hawkins looks to Chapter 3 for resolution of who has a right to enforce the December 20, 2014 note, we look to Chapter 3 only to determine that it does not apply. Chapter 3 applies to "negotiable instruments." *See id.* § 3.102(a). However, contrary to what Hawkins asserts, not all promissory notes are "negotiable instruments." *See id.* § 3.104(a), (e); *Mauricio v. Mendez*, 723 S.W.2d 296, 298 (Tex. App.—San Antonio 1987, no writ) ("It is possible to have a non-negotiable note."). Section 3.104 provides:

(a) Except as provided in Subsections (c) and (d),[5] "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

>    (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
>    (2) is payable on demand or at a definite time; and
>
>    (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:
>
>>        (A) an undertaking or power to give, maintain, or protect collateral to secure payment;
>>
>>        (B) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or
>>
>>        (C) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

TEX. BUS. & COMM. CODE ANN. § 3.104(a).

The December 20, 2014 note is not a negotiable instrument, as that term is defined because it is not "payable to bearer or to order" of Horton. *Id.* § 3.104(a)(1).[6] Except for checks, to be negotiable, an instrument must contain words of negotiability. *See* TEX. BUS. & COM. CODE § 3.104(a)(1), (c). Specifically, an instrument must be "payable to bearer or to order at the time it is issued or first comes into possession of a holder." *Id.* § 3.104(a)(1); *see also id.* § 3.109. As comment 2 explains:

> Total exclusion from Article 3 of other promises or orders that are not payable to bearer or to order serves a useful purpose. It provides a simple device to clearly exclude a writing that does not fit the pattern of typical negotiable instruments and which is not intended to be a negotiable instrument. If a writing could be an instrument despite the absence of "to order" or "to bearer" language and a dispute arises with respect to the writing, it might be argued that the writing is a negotiable instrument because the other requirements of subsection (a) are somehow met.

---

[5] Subsections (c) and (d) are not relevant here.

[6] Because the note is not "payable to bearer or to order" we do not also consider whether the note states additional undertakings not allowed in a negotiable instrument. *See* TEX. BUS. & COMM. CODE ANN. § 3.104(a)(3).

> Even if the argument is eventually found to be without merit it can be used as a litigation ploy. Words making a promise or order payable to bearer or to order are the most distinguishing feature of a negotiable instrument and such words are frequently referred to as "words of negotiability." Article 3 is not meant to apply to contracts for the sale of goods or services or the sale or lease of real property or similar writings that may contain a promise to pay money. The use of words of negotiability in such contracts would be an aberration. Absence of the words precludes any argument that such contracts might be negotiable instruments.

*Id.* § 3.014 cmt. 2.

Because the December 20, 2014 note is not a negotiable instrument, Chapter 3 does not apply. *See id.* § 3.102(a); *see, e.g.*, *Amplify Fed. Credit Union v. Garcia*, No. 03-17-00161-CV, 2017 WL 6757001, at *3 (Tex. App.—Austin Dec. 19, 2017, no pet.) (mem. op.) (holding installment sales contract was not negotiable instrument subject to Chapter 3 because contract did not include words of negotiability); *Great N. Energy, Inc. v. Circle Ridge Prod., Inc.*, 528 S.W.3d 644, 662 (Tex. App.—Texarkana 2017, pet. denied) (same as to promissory note); *Mauricio*, 723 S.W.2d at 298 (same as to promissory note).[7]

Therefore, we overrule Hawkins's issue as to Chapter 3 of the UCC. Because Chapter 3 does not apply, contract law governs. *See Eoff v. Cent. Mut. Ins. Co.*, 461 S.W.3d 648, 658 (Tex. App.—Dallas 2015, no pet.), *judgment set aside, opinion not vacated* (Apr. 23, 2015) ("Between the original parties, a promissory note that has not been negotiated is treated as a simple contract governed by the fundamental rules applicable to contract law."); *see also Great N. Energy*, 528

---

[7] To be sure, the December 20, 2014 note can be assigned. *See, e.g.*, *Tex. Bank & Tr. Co. v. Spur Sec. Bank*, 705 S.W.2d 349, 352 (Tex. App.—Amarillo 1986, no writ) (explaining assignee of non-negotiable certificate of deposit took certificate subject to any defenses and equities that could be made against it); *Gen. Motors Acceptance Corp. v. Matson*, 336 S.W.2d 628, 630 (Tex. App.—Austin 1960, no writ) (same as to retail installment contract); *cf. FFP Mktg. Co.*, 169 S.W.3d at 409 (explaining indorsement of a non-negotiable promissory note does not create a presumption of ownership in transferee). However, an assignee of a non-negotiable instrument cannot be a Chapter 3 "holder in due course," and, generally, must take the non-negotiable instrument subject to any claims and defenses. *See* Tex. Bus. & Comm. Code Ann. § 3.306; *Leavings v. Mills*, 175 S.W.3d 301, 311 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

S.W.3d at 661–62. Hawkins does not argue any reason why contract law would preclude Horton's enforcement of the December 20, 2014 note, other than release, which we discuss next.

### 2. Purported December 19, 2014 Release and Purported Release through a Ranch Deal

Hawkins contends the trial court erred by failing to enforce the December 19, 2014 release and a release pursuant to a ranch deal. Hawkins argues that Horton was precluded from contesting the releases by failing to timely file verified denials and that the trial court abused its discretion by allowing a handwriting expert to opine that a signature on the December 19, 2014 release was not Horton's.

#### *A. Procedural Background*

Hawkins alleged the validity of the December 19, 2014 release beginning with his original counter petition, and he asserted a partnership with Horton related to a ranch deal for the first time in his second amended counter petition, filed a week before trial. On the day of trial, Horton filed a motion for leave to file a verified answer to Hawkins's second amended counter petition. In the verified answer, Horton denied signing the December 19, 2014 release, and he denied any purported partnership with Horton.

Before trial began, Hawkins's counsel objected to Horton's motion for leave. Hawkins's counsel argued that the "signature-related defense" was a completely different defensive strategy that he was previously unaware of. He further argued that he was unable to schedule his expert to inspect "the document at issue in this case" the week before trial and that "because [Horton] had not pled any signature-related defenses, [Hawkins's counsel] assumed [his] expert wasn't needed."

Hawkins's counsel also argued that the disclosure of Horton's handwriting expert, Wendy Carlson, was deficient. The disclosure provides:

> Ms. Carlson will testify as to the review and forensic analysis of the subject December 2014 handwritten promissory note between the parties to determine

whether or not any language was added or removed after the parties' executed the note and as a potential rebuttal expert for any experts designated by any other party.

According to Hawkins's counsel: "[The] expert witness designation does not mention signatures a single time, not once. And it only mentions a single document, . . . which is not the document that [Horton claims he] didn't sign." Hawkins's counsel requested a continuance to depose Horton's expert and to prepare a rebuttal expert if the trial court granted Horton's motion for leave. The trial court took the matter under advisement, but it never expressly ruled on the motion.

On appeal, Hawkins argues that Horton's answer to his counter petition does not include verified denials because the trial court never expressly granted leave for Horton to file his verified answer. Consequently, Hawkins argues, the validity of the December 19, 2014 release agreement and the existence of the alleged partnership cannot be denied, and the releases must be given effect. Hawkins also argues that, even if the trial court had granted leave to file the verified answer, it abused its discretion. Hawkins argues as to Carlson that the trial court abused its discretion by allowing her testimony because Horton's disclosure was deficient. We consider first the pleading amendment and then the expert disclosure.

### B. Pleading Amendment

A denial of the execution of a written instrument and a denial of a partnerships must be raised by verified pleadings. TEX. R. CIV. P. 93(5), (7). Without a verified denial, a written instrument is received into evidence as fully proved, and a partnership's existence cannot be controverted at trial. *See id.* R. 93(7); *GR Fab'n, LLC v. Swan*, No. 02-19-00242-CV, 2020 WL 2202325, at *3 n.3 (Tex. App.—Fort Worth May 7, 2020, no pet.) (mem. op.).

Texas Rule of Civil Procedure 63 allows a party to amend its pleading within seven days of trial with leave, "which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party." TEX. R. CIV. P. 63. Courts liberally

interpretate Rule 63. *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988). "[I]n the absence of a sufficient showing of surprise by the opposing party, the failure to obtain leave of court when filing a late pleading may be cured by the trial court's action in considering the amended pleading." *Id.* We must presume the trial court granted leave when: "(1) the record fails to show that the trial court did *not* consider the amended pleading, and (2) there is not a sufficient showing of surprise or prejudice on the part of the opposing party." *Wilson v. Korthauer*, 21 S.W.3d 573, 578 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (citing *Goswami*, 751 S.W.2d at 490); *see also B.C. v. Steak N Shake Opr'ns, Inc.*, 598 S.W.3d 256, 262 n.29 (Tex. 2020). Furthermore, a trial court has no discretion to refuse an amendment unless (1) the opposing party presents evidence of surprise or prejudice or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994); *Knorpp v. CIT Group/Consumer Fin., Inc.*, No. 07-19-00177-CV, 2020 WL 4459130, at *2 (Tex. App.—Amarillo Aug. 3, 2020, no pet.) (mem. op.). The party opposing amendment bears the burden to show prejudice or surprise. *Mosaic Baybrook One, L.P. v. Cessor*, 668 S.W.3d 611, 626 (Tex. 2023). "A trial court's decision on whether to allow the amendment of pleadings is reviewed under an abuse-of-discretion standard." *Perez v. Embree Constr. Grp.,* 228 S.W.3d 875, 882–83 (Tex. App.—Austin 2007, pet. denied).

There is nothing in the record to indicate that the trial court did not consider Horton's amended pleading. *See Goswami*, 751 S.W.2d at 490; *Korthauer*, 21 S.W.3d at 578. Moreover, the trial court's findings of facts indicate that it considered Horton's verified denials because a finding states that Horton established he did not agree to release Hawkins from any obligations owed. Therefore, whether we may presume leave was granted and whether the trial court acted within its discretion by granting leave to file the amended answer with verified denials turns on

whether Hawkins has established surprise. *See Kilpatrick*, 874 S.W.2d at 658; *Mosaic Baybrook One*, 668 S.W.3d at 626; *Goswami*, 751 S.W.2d at 490; *Korthauer,* 21 S.W.3d at 578.

We hold that Hawkins has not made a sufficient showing of surprise to defeat the presumption of leave and to establish abuse of discretion because he has not presented evidence of surprise, and the pleading amendment is not prejudicial on its face. *See Kilpatrick*, 874 S.W.2d at 658. Hawkins's counsel presented only argument at the pretrial hearing on the motion for leave. As to facial prejudice, the standard is that an amendment is prejudicial on its face if it: "(1) asserts a new substantive matter which reshapes the nature of the trial; (2) is of such a nature that it could not have been anticipated in light of the development of the case up until the time of amendment; and (3) would detrimentally affect the opposing party's presentation of its case." *1776 Energy Partners, LLC v. Marathon Oil EF, LLC*, No. 04-20-00304-CV, 2023 WL 2669669, at *12 (Tex. App.—San Antonio Mar. 29, 2023, no pet.) (quoting *Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 566 S.W.3d 801, 827 (Tex. App.—Houston [14th Dist.] 2018, pet. denied)).

Here, the record shows that Horton's amendment could have been anticipated in light of the development of the case up until the time of amendment; therefore, it was not prejudicial on its face. *See id.* First, by his claims, Horton sought recovery of an allegedly unpaid debt. His claims logically implied rejection of Hawkins's contention, asserted in counterclaims, that Horton had released the debt. Second, Horton contested any release by his discovery responses, deposition testimony, and summary-judgment briefing. As to the purported December 19, 2014 release, in his summary-judgment response, Horton "vigorously dispute[d] the validity and authenticity of his signature on that document." *Cf. Lemon v. Hagood*, 545 S.W.3d 105, 119–20 (Tex. App.—El Paso 2017, pet. denied) ("We fail to find any surprise here. The motion for summary judgment and response fleshed out the arguments of the parties well in advance of trial."). Third, Hawkins designated an expert, whose expected testimony he described as "regarding the documents at issue

in this case, including but not limited to the authenticity of signatures and alterations of any documents." On this record, we cannot say that Hawkins has established surprise due to the amendment. *See Mosaic Baybrook One*, 668 S.W.3d at 626.

### C. Testimony of Horton's Handwriting Expert

Hawkins also contends that Horton's disclosure of his handwriting expert, Carlson, was deficient and that the trial court abused its discretion by allowing her testimony. Carlson testified as to her opinion that the disputed signature on the December 19, 2014 release was not Horton's.

The Texas Rules of Civil Procedure require disclosure of "the general substance of [a testifying] expert's mental impressions and opinions and a brief summary of the basis for them." TEX. R. CIV. P. 194.2(f).[8] Testimony may be excluded as a sanction under Rule 193.6 for failure to comply with Rule 194.2(f). *See id.* R. 193.6; *Mares v. Ford Motor Co.*, 53 S.W.3d 416, 418 (Tex. App.—San Antonio 2001, no pet.).

To obtain reversal of a judgment based on error in the admission or exclusion of evidence, an appellant must show that the trial court's ruling was erroneous and that the error probably resulted in an improper judgment. TEX. R. APP. P. 44.1; *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). "A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted." *Alvarado*, 897 S.W.2d at 753–54; *see also Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004) ("Clearly, erroneous admission [of evidence] is harmless if it is merely cumulative."). To make this determination, we review the entire record. *Alvarado*, 897 S.W.2d at 754.

---

[8] Because former Rule 194.2 was in effect when this case was filed, we cite to that former rule. Provisions regarding expert disclosures are now found in Rule 195.5, which applies to cases filed on or after January 1, 2021. TEX. R. CIV. P. 195.5; Order, Misc. Docket No. 20-9153 (Tex. Dec. 23, 2020); *Siana Oil & Gas Co. v. White Oak Opr'g Co.*, No. 01-21-00721-CV, 2022 WL 17981572, at *8 n.11 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, no pet.) (mem. op.).

Even if we assume the trial court erred by allowing Carlson's testimony, Hawkins has not demonstrated that any error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). Hawkins did not argue harm in his opening brief. In his reply brief he asserts that, absent Carlson's testimony, the only evidence to dispute Horton's signature is Horton's "self-serving testimony" that he did not sign the December 19, 2014 release. Generally, a trial court at a bench trial may accept or reject all or any part of a witness's testimony. *Weisfield v. Tex. Land Fin. Co.*, 162 S.W.3d 379, 380 (Tex. App.—Dallas 2005, no pet.). Here, while the trial court was not required to accept Horton's testimony as credible, it also was not required to reject it. Likewise, the trial court was free to believe or disbelieve Hawkins's testimony that the parties executed the December 19, 2014 release. As stated in a finding of fact, the trial court determined Hawkins's testimony, offered in support of his affirmative defenses and counterclaims, was "not credible." *See In re Marriage of Slagle*, No. 14-16-00113-CV, 2018 WL 2306736, at *6 (Tex. App.—Houston [14th Dist.] May 22, 2018, pet. denied) (mem. op.) (rejecting husband's argument trial court abused discretion when it divided community estate because trial court could have believed wife's testimony over husband's). Moreover, Hawkins testified that signatures on certain documents in evidence were his, and, based on this testimony, the trial court could have compared signatures and determined that the signature on the December 19, 2014 release was not Horton's. *See, e.g.*, *Nguyen v. Pham*, 640 S.W.3d 266, 275 (Tex. App.—Houston [14th Dist.] 2021, pet. denied); *see also, e.g.*, *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 848 (Tex. App.—Dallas 2011, no pet.). Additionally, it was undisputed that Hawkins continued making payments to Horton after December 19, 2014, which is some additional evidence supporting Horton's assertion that he did not execute the December 19, 2014 release. In light of this record, we hold error, if any, in allowing Carlson's testimony was harmless because Carlson's testimony was

cumulative. *See* Tex. R. App. P. 44.1; *Armstrong*, 145 S.W.3d at 144; *see Alvarado*, 897 S.W.2d at 753.

### 3.  The Purported Release pursuant to the Horton-Ward-HWE Settlement

We next consider Hawkins's third contention for release: release pursuant to the Horton-Ward-HWE settlement agreement.  We also reject this contention.

On December 14, 2020, Hawkins, Ward, and HWE entered into an agreement, pursuant to which Ward purchased Hawkins's equity in HWE and became HWE's sole owner.  The agreement outlined a procedure under which an appraiser would value HWE and Ward would then purchase Hawkins's stake at the appraised value.  At trial, Ward testified that Horton conveyed HWE's business properties to her in June 2021.

Also on December 14, 2020, Horton settled with Ward and HWE.  The Horton-Ward-HWE settlement agreement defines "parties" to mean "Bobby Horton, Courtney Ward and Hawkins Ward Enterprises, LLC."  Pursuant to the settlement agreement, HWE paid Horton $25,000, and the settling parties agreed to release their claims and demands against the other settling parties. The agreement states that it is not subject to revocation.  The settlement agreement also states: "This mutual release runs to the benefit of all attorneys, agents, employees, officers, directors, shareholders, partners, heirs, assigns, and legal representatives of the parties hereto."  Additionally, the Horton-Ward-HWE settlement agreement includes a provision that all funds paid by Ward or HWE to Hawkins in exchange for his ownership interest in HWE shall be deposited into the registry of the court.  Horton, Ward, and HWE also signed an addendum "[e]xecuted to be effective December 14, 2020," which specifically excludes Hawkins from the release.

On appeal, Hawkins argues that the Horton-Ward-HWE settlement agreement runs to his benefit because he was still an owner of HWE on December 14, 2020.  As Ward testified, the transfer of HWE's business property to her did not occur until June 2021.  Hawkins argues that,

as an owner of HWE on December 14, 2020, he fell within the provision that specified: "This mutual release runs to the benefit of all attorneys, agents, employees, officers, directors, shareholders, partners, heirs, assigns, and legal representatives of the parties hereto." He also argues the addendum is ineffective because it was not signed by all necessary persons and because it could not serve to revoke any previously granted release.

A release agreement is only effective against the parties that are named in the release or are described in the release with such particularity that the party's identity is not in doubt. *Memorial Med. Ctr. of E. Tex. v. Keszler*, 943 S.W.2d 433, 434 (Tex. 1997) (per curiam) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420 (Tex. 1984)). "[The] requirement of specific identification is not met unless the reference in the release is so particular that 'a stranger could readily identify the released party.'" *Finley Res., Inc. v. Headington Royalty, Inc.*, No. 21-0509, 2023 WL 3399104, at *5 (Tex. May 12, 2023) (quoting *Duncan*, 665 S.W.2d at 419–20 (citation omitted)). Interpretation of an uncontested and unambiguous release is to be decided by the court as a question of law. *Keszler*, 943 S.W.2d at 434; *Westwind Expl. v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 381 (Tex. 1985).

Even if we do not consider the addendum, we hold that the Horton-Ward-HWE settlement agreement does not describe Hawkins with such particularity that we can be free of doubt that the release runs to his benefit. *See Keszler*, 943 S.W.2d at 434. Instead, the agreement raises doubt as to whether he is a party to the release. First, he is not defined as a party; Ward, HWE, and Horton are. Hawkins's omission as a named party does not appear to be an oversight because the settlement agreement includes a style of the case, which lists Hawkins as a defendant to Horton's lawsuit. Second, the court-registry provision raises doubt about whether Hawkins is included as a "shareholder," "partner," or other person related to Ward or HWE, for whom the benefits of the release could run. The court-registry provision contemplates payment of funds by Ward or HWE

to Hawkins in exchange for his ownership of HWE. With such a provision contemplating termination of Hawkins's ownership, we cannot say that a term describing "agents, employees, officers, directors, shareholders, [and] partners" of Ward and HWE identifies Hawkins with such particularity that we can be free of doubt the release runs to his benefit. *Cf. Finley Res.*, 2023 WL 3399104, at *7–10 (holding person not specifically named, "despite the looming threat of litigation," was not among a class of "predecessors" to whose benefit release ran). Therefore, we conclude the trial court did not err by refusing to extend the settlement's release of claims and demands to Hawkins's benefit.

### 4. Legal Sufficiency of the Evidence as to Damages

Having rejected challenges to Hawkins's liability for breach of contract, we now consider whether the $352,837 awarded as contract damages is supported by legally sufficient evidence.

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *See id.* at 827. When there is conflicting evidence, it is the province of the fact finder to resolve such conflicts, and we must presume the fact finder resolved conflicting evidence in favor of the prevailing party. *Id.* at 820–21. To sustain a challenge to the legal sufficiency of the evidence supporting a finding, the reviewing court must find that: (1) there is a complete lack of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) there is no more than a mere scintilla of evidence to prove a vital fact; or (4) the evidence conclusively established the opposite of a vital fact. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 (Tex. 2004). "If there is more

than a scintilla of evidence to support the judgment, we must uphold it." *Vast Constr., LLC v. CTC Cont'rs, LLC*, 526 S.W.3d 709, 719 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

The trial court found that the "current amount owed to Horton" was $352,837. Hawkins argues, on appeal, that Horton's admission at trial that he kept no records conclusively establishes Horton did not know the certain sum due on the note.[9] Having reviewed the trial record, we hold there is more than a scintilla of evidence to support the finding as to contract damages. Horton testified that Hawkins: (1) started making payments on the December 20, 2014 note in January 2015; (2) he paid "$2,500 and change a month"; (2) he made "probably 98 percent of [payments] in cash"; (4) he "never missed a month during all of that time"; and he paid through November 2016. Hawkins testified that he paid in cash, and he did not know exactly when he stopped making payments. Also included in the record are: (1) a text message, dated December 14, 2019, from Horton to Hawkins which states: "If you do not your [sic] payment due on 12/20/19, we will foreclose on General Rental. The balance due on your note is $352,837.00 including interest."; (2) a pre-litigation demand letter from Horton's counsel to Hawkins, stating $352,837 as the "current amount due"; and (3) a calculation reflecting a total amount due on December 20, 2019, of $352,837. This calculation purports to apply twenty-two payments of $2,502.07, which is the monthly payment amount stated in the December 20, 2014 note, and to add interest to the outstanding principal, based on a 3.5% interest rate, which is the interest rate stated in the note. *Cf. Gen. Growth Props., Inc. v. Prop. Tax Mgmt., Inc.*, 614 S.W.3d 386, 396 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("Because each of these invoices contain complete calculations applying the formula to which the parties agreed to the results actually obtained, they are legally and

---

[9] Hawkins does not cite to any authority for the proposition that a failure to keep contemporaneous records of payment conclusively establishes that the amount of a debt cannot be known.

factually sufficient to support damage awards [in specific amounts].").  We overrule Hawkins's legal sufficiency challenge as to the amount of damages.[10]

### 5.  Settlement Credit

Nevertheless, we reduce the damages award by $25,000 because the trial court failed to apply a settlement credit when Hawkins pled for such a credit based on the Horton-Ward-HWE settlement.

Texas Civil Practice and Remedies Code section 33.012(b) requires that a court "reduce the amount of damages to be recovered by the claimant with respect to a cause of action by the sum of the dollar amounts of all settlements."  To obtain a settlement credit, "the record [need only] show, in the settlement agreement or otherwise, the settlement credit amount." *Utts v. Short*, 81 S.W.3d 822, 828 (Tex. 2002).  "Once the nonsettling defendant demonstrates a right to a settlement credit, the burden shifts to the plaintiff to show that certain amounts should not be credited because of the settlement agreement's allocation." *Id.*  Specifically, "[t]he plaintiff can rebut the presumption . . . by presenting evidence showing that the settlement proceeds are allocated among defendants, injuries, or damages such that entering judgment on the [fact finder's] award would not provide for the plaintiff's double recovery." *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 107–08 (Tex. 2018).  "If there is no allocation, the settlement is presumed to have satisfied liability common among the parties." *LuxeYard, Inc. v. Klinek*, 643 S.W.3d 260, 265 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (citing *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 928 (Tex. 1998)).

---

[10] To the extent Hawkins argues that establishment of a certain sum due is an element of a breach of contract claim, for which there was not legally sufficient evidence in the record, we reject Hawkins's argument because there is legally sufficient evidence of the amount the trial court determined was due, which is the amount it awarded as damages.

Here, application of the settlement credit is straightforward. Horton asserted the same breach of contract and quantum meruit causes of action against both Hawkins and HWE. Horton then settled with HWE for $25,000; the settlement agreement was admitted at trial; and Horton did not attempt to allocate the settlement amount among defendants or otherwise. Therefore, the settlement amount should have been credited to reduce the amount of damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.012(b); *Utts*, 81 S.W.3d at 828; *see also Dalworth Restoration, Inc. v. Rife-Marshall*, 433 S.W.3d 773, 782 (Tex. App.—Fort Worth 2014, pet. dism'd w.o.j.) (holding trial court abused its discretion by refusing to apply settlement credit and rendering take-nothing judgment where credited amount exceeded damages awarded).

On appeal, Horton does not contest that a settlement credit should be applied. Instead, he argues the trial court applied the credit when it reduced the attorney's fees award. The record does not bear out Horton's assertion. At trial, Horton's attorney testified that Horton incurred $147,576.75 in attorney's fees, with approximately fifteen percent of this amount incurred "with respect to specifically the claims in the settlement" with Ward and HWE. Upon conclusion of trial, the trial court stated that Horton was entitled to recover attorney's fees, and it explained the amount it would award:

> I've reduced the attorney's fees by 15 percent, thereby removing approximately the amount of time and expense spent on [Horton's counsel's] dealing with [HWE] to the settlement of that matter. Therefore, the attorney's fees in the amount of $147,576, rounded, reduced by 15 percent, goes to [$]125,441.

The final judgment awards $125,441 in attorney's fees for prosecution of the case through judgment. A finding of fact states Hawkins failed to prove "his affirmative defense that Horton's claims were entitled to offset by a settlement credit for . . . $25,000 paid by [HWE] in December 2020." Another finding of fact states:

> Horton incurred reasonable and necessary attorney's fees in the amount of $167,576.75 [sic], of which, after all credits for payments received previously by

Horton, and was reduced for time spent on matters involving Hawkins Ward Enterprises, LLC, supports an award of attorneys' fees in the amount of $125,441.00 in favor [of] Horton for the prosecution of his breach of contract claim against Hawkins.

This record shows the trial court reduced attorney's fees by the amount it determined could be segregated and attributed to work incurred related to claims against HWE. The record does not reflect that the trial court applied a settlement credit to "reduce the amount of damages," as required by section 33.012(b) of the Texas Civil Practice and Remedies Code. Therefore, we amend the judgment to reduce the damages award by the amount of the Horton-Ward-HWE settlement. Actual damages are reduced from $352,837 to $327,837.

## 2. Exclusion of Testimony related to Hawkins's Claims

In a single issue concerning his counterclaims, Hawkins contends the trial court abused its discretion by striking Horton's counsel as a fact witness. *See In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) ("We review a trial court's decision to admit or exclude evidence for an abuse of discretion."); *see also Van Heerden v. Van Heerden*, 321 S.W.3d 869, 877, 79 (Tex. App.— Houston [14th Dist.] 2010, no pet.) (holding trial court abused its discretion by striking fact witness). Hawkins argues on appeal:

> Hawkins brought claims against Horton based on a fraudulently filed a [sic] UCC-1 financing statement against covering [sic] property superseded by the December 20, 2014 note at issue in this case. . . . That financing statement was filed by [Horton's counsel] on Horton's behalf. . . . Since [Horton's counsel's] services were sought to enable the collection on a superseded security interest, his testimony meets the requirements of Rule 503[ of the Texas Rules of Evidence].

"Texas Rule of Evidence 503(b)(1) provides for privileged communications between clients and their attorneys." *In re AEP Tex. Cent. Co.*, 128 S.W.3d 687, 691 (Tex. App.—San Antonio 2003, no pet.). "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client: . . . between the client . . . and the client's lawyer[.]" TEX.

R. EVID. 503(b)(1). However, no attorney-client privilege exists if the "crime/fraud" exception in Rule 503 applies. *Id.* R. 503(d)(1). The exception applies "[i]f the lawyer's services were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." *Id.*

While the burden of proving a privilege is on the party asserting the privilege, the burden of establishing the crime/fraud exception is on the party asserting the exception. *In re AEP Tex. Cent.*, 128 S.W.3d at 692; *Volcanic Gardens Mgmt. Co., Inc. v. Paxson*, 847 S.W.2d 343, 347 (Tex. App.—El Paso 1993, no writ). "A party who asserts the crime/fraud exception must show: (1) a prima facie case of the contemplated crime or fraud; and (2) a nexus between the communications at issue and the crime or fraud." *In re USA Waste Mgmt. Res., L.L.C.*, 387 S.W.3d 92, 98 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding [mand. denied]) (citing *Granada Corp. v. Hon. First Ct. App.*, 844 S.W.2d 223, 227 (Tex. 1992)). "Mere allegations of fraud are insufficient." *Id.* "A prima facie showing is sufficient if it sets forth evidence that, if believed by a trier of fact, would establish the elements of a fraud or crime that was ongoing or about to be committed . . . ." *In re Gen. Agents Ins. Co. of Am.*, 224 S.W.3d 806, 819 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding) (citation omitted).

To establish application of the crime/fraud exception, it was Hawkins's burden to show a prima facie case of a contemplated crime or fraud. *In re USA Waste Mgmt.*, 387 S.W.3d at 98. Such a showing would have required Hawkins to set forth evidence and explain how the evidence, if believed, would establish the elements of a crime or fraud. *In re Gen. Agents Ins.*, 224 S.W.3d at 819. It also is Hawkins's burden, on appeal, to show that the trial court's evidentiary ruling probably caused the rendition of an improper judgment, which "usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted." *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000); *see* TEX. R. APP. P. 44.1(a). After the trial

court excluded testimony from Horton's counsel, Hawkins's counsel argued, at closing, for judgment in Hawkins's favor on his counterclaims based on the documents in evidence. On appeal, Hawkins does not argue harm. *See* TEX. R. APP. P. 44.1(a). His appellate brief also does not provide or discuss the elements as to any crime or fraud or explain how the evidence could show a prima facie case. *See In re Gen. Agents Ins.*, 224 S.W.3d at 819. Therefore, we overrule Hawkins's issue regarding the exclusion of testimony because Hawkins has not established that excluded testimony from Horton's counsel, even if erroneously excluded, was controlling on a material issue dispositive to the case and was not cumulative or that exclusion otherwise probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a); *Able*, 35 S.W.3d at 617; *see also Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001) ("[O]rdinarily, this Court will not reverse a judgment because a trial court erroneously excluded evidence when the evidence in question is cumulative and not controlling on a material issue dispositive to the case.").

### 3. Attorney's Fees

Last, Hawkins argues the evidence supporting the attorney's fees award is legally insufficient. Horton did not submit invoices or billing records. Hawkins argues that Horton's counsel's testimony in support of fees is insufficiently detailed. Horton responds that the evidence is sufficient in light of presumptions allowed in breach-of-contract cases.

At trial, Horton's counsel testified as to his, co-counsel's, and office paralegals' hourly rates and his opinion as to the reasonableness of those rates. He also testified that his office spent a total of 506 hours on the case and that the total amount of fees incurred was $147,576.75. Horton's counsel, however, did not provide billing records with details specifying time spent on discrete tasks by particular individuals. He testified generally as to the experience of lawyers and

paralegals in his office, the nature of the case, and tasks performed during various stages of the case.

Attorney's fees are not recoverable unless authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). "When fee-shifting is authorized, the party seeking to recover those fees bears the burden of establishing the fees are reasonable and necessary." *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017). In *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019), the Texas Supreme Court summarized the method used to determine the reasonableness and necessity of attorney's fees:

> Under the lodestar method, the determination of what constitutes a reasonable attorney's fee involves two steps. First, the [fact finder] must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. The [fact finder] then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. The [fact finder] may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.

*Id.* at 501 (quoting *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)). "General, conclusory testimony devoid of any real substance will not support a fee award." *Id.* Sufficient evidence includes "evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 502. While the court in *Rohrmoos* did not require billing records, it stated they "are *strongly* encouraged." *Id.* Hawkins argues the trial court's attorney's fees award contradicts the basic requirements set forth in *Rohrmoos*.

Horton sought attorney's fees under Texas Civil Practice and Remedies Code section 38.001, which allows a prevailing party in a breach-of-contract case to recover reasonable and necessary attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001. Under Chapter 38, the trial court "may take judicial notice of the usual and customary attorney's fees and of the

contents of the case file without receiving further evidence" in a proceeding before the court. *Id.* § 38.004. Further, "[i]t is presumed that the usual and customary attorney's fees for a [breach-of-contract] claim are reasonable." *Id.* § 38.003. "The presumption may be rebutted." *Id.*; *see Person v. MC-Simpsonville, SC-1-UT, LLC*, No. 03-20-00560-CV, 2021 WL 3816332, at *7 (Tex. App.—Austin Aug. 27, 2021, no pet.) (mem. op.).

Because this case was tried to the bench, section 38.004 authorized the trial court to judicially notice usual and customary attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.004; *Beach St. Foods, Inc. v. Grandy's, LLC*, No. 02-20-00135-CV, 2022 WL 187988, at *10 (Tex. App.—Fort Worth Jan. 20, 2022, no pet.). As the supreme court noted in *Rohrmoos*, Chapter 38 includes noteworthy provisions not typically found in other statutory fee enactments. *See Rohrmoos*, 578 S.W.3d at 490 n.9; *cf. Logan v. Randall*, No. 05-19-00043-CV, 2020 WL 948381, at *8 (Tex. App.—Dallas Feb. 27, 2020, pet. denied) ("[T]he evidentiary requirements to support an award of attorney's fees under chapter 38 are completely different when the issue is presented to the trial court for determination rather than to a jury.").

"In the absence of other evidence supporting an attorney's fee award[, when allowed under Chapter 38 in a bench trial], the reviewing court will presume that the trial court took judicial notice of the usual and customary fees and of the contents of the case file in determining the amount of attorney's fees awarded." *Scott Pelley P.C. v. Wynne*, 578 S.W.3d 694, 705 (Tex. App.—Dallas 2019, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 38.005 (specifying liberal construction of Chapter 38 to promote its underlying purpose). "Judicial notice of the usual and customary fees constitutes some evidence on which the trial court may base an award." *Scott Pelley P.C. v. Wynne*, 578 S.W.3d at 705.

On this record and pursuant to Chapter 38, the trial court had legally sufficient evidence on which to base its award. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.003–.005; *Hernandez v.*

*Zapata*, No. 04-19-00507-CV, 2020 WL 3815932, at *8 (Tex. App.—San Antonio July 8, 2020, no pet.) (mem. op.) (holding attorney's fees award supported by legally sufficient evidence in light of judicial notice taken pursuant to section 38.004); *Scott Pelley P.C.*, 578 S.W.3d at 705 (Tex. App.—Dallas 2019, no pet.) (concluding evidence legally sufficient to support attorney's fees award under Chapter 38 based on presumed judicial notice of contents of case file and usual and customary attorney's fees). Here, the trial court found that "Horton incurred reasonable and necessary attorney's fees," and Hawkins did not put on any evidence contesting the reasonableness of Horton's attorney's fees. Additionally, Horton's counsel testified generally as to the fees incurred and his opinion that the fees incurred were reasonable. We overrule Hawkins's issue as to attorney's fees.

## CONCLUSION

We modify the trial court's judgment to reduce actual damages awarded from $352,837 to $327,837, and we affirm the judgment as modified. *See* TEX. R. APP. P. 43.2(b).

Rebeca C. Martinez, Chief Justice